J-S35028-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MICHAEL O'DONNEL MCKINNEY | |
| Appellant | No. 2041 MDA 2013 |

Appeal from the Judgment of Sentence of October 16, 2013
In the Court of Common Pleas of Lancaster County
Criminal Division at No.: CP-36-CR-0000426-2013

BEFORE:  DONOHUE, J., WECHT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY WECHT, J.:                    **FILED AUGUST 07, 2014**

Michael O'Donnel McKinney appeals his October 16, 2013 judgment of sentence.  We affirm.

The trial court summarized the relevant factual and procedural history of this case, as follows:

> On November 1, 2012, [two police officers] were dispatched to [McKinney's residence] for a reported domestic incident.  When the officers arrived, they could hear male and female voices yelling inside the apartment.  Upon knocking on the door, the officer heard a loud thud and a male voice yell, "[d]on't you open my fucking door."  The officers attempted to open the door and finally, [McKinney] opened the door and refused to permit entry to the officers.  The officers wanted to check on the welfare of the female [that] they had heard inside, but [McKinney] refused to move or allow entry.

_____

[*]     Retired Senior Judge assigned to the Superior Court.

Finally, the officers physically removed [McKinney] from the door and restrained him so that they could enter. [McKinney] fought the officers' attempts to restrain him and screamed at police until other occupants of the apartment building came out of their apartments to see the commotion. Upon entering the apartment to check the welfare of the female and to determine if anyone else was present, [a police officer] located two baggies of marijuana in plain view in [McKinney's] apartment.

[McKinney] was charged with disorderly conduct[1] and possession[—]small amount of marijuana.[2] On June 19, 2013, [McKinney] filed a motion to suppress evidence and a suppression hearing was held on October 15, 2013. The suppression motion was denied based on the [trial] court's findings that the totality of the circumstances justified the police officers' reasonable belief that they needed to enter [McKinney's] apartment to ensure that the female . . . was not in danger or in immediate need of aid and that the police were not required to ignore marijuana that they see in the living room while conducting a legal sweep of the apartment. A jury trial followed the suppression hearing. The jury found [McKinney] guilty of the disorderly conduct [charge] and the judge found [McKinney] guilty of the possession[—]small amount of marijuana [charge]. [On October 16, 2013, McKinney] was sentenced to [one] year of probation for the disorderly conduct [conviction] and thirty days of probation for the [marijuana possession conviction], with the sentences to run concurrently.

[1] 18 Pa.C.S. § 5503(a)(2).

[2] 35 P.S. § 780-113(a)(31).

Trial Court Opinion ("T.C.O."), 12/20/2013, at 1-2 (citations omitted or modified, minor modifications to capitalization).

On November 15, 2013, McKinney filed a timely notice of appeal. On November 19, 2013, the trial court ordered McKinney to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On December 9, 2013, McKinney timely filed his Rule 1925(b) statement pursuant to the trial court's November 19, 2013 order. On December 18,

2013, the Commonwealth filed a response to McKinney's Rule 1925(b) statement. On December 20, 2013, the trial court filed an opinion pursuant to Pa.R.A.P. 1925(a).

McKinney presents two issues for our review:

(1)  Did the trial court err in denying [McKinney's] suppression motion, where no exigent circumstances supported a protective sweep of the entire apartment when both parties to the domestic dispute were located, questioned, and secured in the entrance hallway to the apartment?

(2)  Was the evidence presented by the Commonwealth insufficient to prove beyond a reasonable doubt that [McKinney] was in constructive possession of the marijuana found in the living room of his apartment?

Brief for McKinney at 5.

In his first issue, McKinney alleges that the trial court erred in denying his motion to suppress evidence because the evidence was "discovered during a protective sweep which was not conducted incident to the arrest of [McKinney or the putative victim]." Brief for McKinney at 21. McKinney further alleges that police were not in possession of "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbor[ed] an individual posing a danger to those on the arrest scene." *Id.* (quoting *Commonwealth v. Potts*, 73 A.3d 1275, 1281-82 (Pa. Super. 2013)).

Our standard for reviewing a trial court's denial of a suppression motion is well-settled:

> [I]n addressing a challenge to a trial court's denial of a suppression motion [we are] limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Since the [Commonwealth] prevailed in the suppression court, we may consider only the evidence of the [Commonwealth] and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Cauley,* 10 A.3d 321, 325 (Pa. Super. 2010) (quoting *Commonwealth v. Bomar,* 826 A.2d 831, 842 (Pa. 2003)).

As a general rule, "a search warrant is required before police may conduct any search." *Commonwealth v. White*, 669 A.2d 896, 900 (Pa. 1995). Absent the application of one of a few clearly delineated exceptions, a warrantless search or seizure is presumptively unreasonable. *Id.* (citing *Horton v. California*, 496 U.S. 128, 134 n.4 (1990)). This is the law under both the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution. *Commonwealth v. McCree*, 924 A.2d 621, 627 (Pa. 2007).

Before addressing whether the officers' "sweep" of McKinney's apartment was constitutionally proper, we first must assess whether the officers legitimately entered McKinney's apartment in the absence of a warrant. One such exception to our well-established warrant requirement is "exigent circumstances," which this Court has explained, as follows:

> The exigent circumstances exception to the warrant requirement recognizes that some situations present a compelling need for

- 4 -

instant arrest, and that delay to seek a warrant will endanger life, limb[,] or overriding law enforcement interests. In these cases, our strong preference for use of a warrant must give way to an urgent need for immediate action.

* * *

Other factors may also be taken into account, such as whether there is hot pursuit of a fleeing felon, a likelihood that evidence will be destroyed if police take the time to obtain a warrant, **or a danger to police or other persons inside or outside the dwelling**.

***Commonwealth v. Richter***, 791 A.2d 1181, 1184-85 (Pa. Super. 2002) (emphasis added). "An inquiry to determine whether exigent circumstances exist involves a balancing of the individual's right to be free from unreasonable intrusions against the interest of society in investigating crime quickly and adequately." ***Commonwealth v. Hinkson***, 461 A.2d 616, 618 (Pa. Super. 1983). "It requires an examination of all of the surrounding circumstances in a particular case." ***Id.*** (citing ***Commonwealth v. Harris***, 239 A.2d 290, 292 (Pa. 1968)).

"One of these circumstances is when police reasonably believe that someone within a residence is in need of immediate aid." ***Potts***, 73 A.3d at 1280 (citing ***Commonwealth v. Galvin***, 985 A.2d 783, 795 (Pa. 2009)). Indeed, Pennsylvania courts specifically have singled out domestic disputes as a situation that may give rise to exigency:

"It is widely recognized that situations involving the potential for imminent physical harm in the domestic context implicate exigencies that may justify limited police intrusion into a dwelling in order to remove an item of potential danger." ***Commonwealth v. Wright***, 742 A.2d 661, 664 (Pa. 1999). The relevant inquiry is "whether there was an objectively

- 5 -

> reasonable basis for believing that medical assistance was
> needed, or persons were in danger[.]" *Michigan v. Fisher*, 558
> U.S. 45, 49 (2009) (citation and quotation marks omitted).
> "[T]he calculus of reasonableness must embody allowance for
> the fact that police officers are often forced to make split-second
> judgments—in circumstances that are tense, uncertain, and
> rapidly evolving." *Ryburn v. Huff*, 132 S.Ct. 987, 992 (2012)
> (quoting *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)).

*Potts*, 73 A.3d at 1280-81 (citations modified).

In the instant case, the officers were responding to a domestic dispute complaint at McKinney's residence. Notes of Testimony—Suppression ("N.T. Suppression"), 10/15/2013, at 6-7. En route to McKinney's residence, the officers received a radio transmission advising that a stabbing had recently occurred at the same address. *Id.* at 7-8. Upon arriving at the scene, the officers heard screaming between a man and a woman emanating from McKinney's apartment. *Id.* at 8-10. Immediately after knocking on McKinney's apartment door, the officers heard a male voice yell, "Don't you fucking open my door," which was immediately followed by a "loud thud." *Id.* at 10-11. The officers described the loud thud as akin to the sound of a head striking a wall. *Id.* Following the verbal outburst and loud thud, the argument inside of the apartment suddenly ceased. *Id.* at 11.

At that point, "[b]elieving that somebody was harmed and injured inside the apartment," the officers attempted to forcibly enter the apartment. *Id.* While both officers were issuing verbal commands for McKinney to open the door, McKinney eventually complied. *Id.* at 12. However, after opening the door, McKinney blocked the doorway "in an

aggressive stance [with] fists locked tight" and told the officers that "[they] weren't fucking coming into his apartment." *Id.* at 12-13. The officers could not see past McKinney into the apartment. *Id.* at 21. One of the officers further testified that "McKinney's actions [in acting hostile and blocking the doorway] were stopping me from verifying injuries and aiding any assistance that was needed due to injury for any subjects inside." *Id.* at 13. Ultimately, the officers physically restrained and removed McKinney from the doorway because "[they] needed to go into the apartment and check on the possibly injured subject inside." *Id.* at 13.

This recitation of events indicates that the police were responding to an exigency created by their first-hand observations, which led them to believe that a woman inside of the dwelling had been injured during a domestic dispute. The police were on-hand to hear the dispute occurring behind closed doors, and were able separately to identify the voices of McKinney and his putative paramour. Immediately after attempting to gain peaceable entry into the apartment by knocking, the police heard McKinney's exclamation, which was followed by a loud "thud" as the female voice inside of the apartment went silent. Even after opening the door, McKinney sought to prevent the police officers from entering, which precluded the officers from determining whether anyone actually had been injured.

Reviewing the totality of these circumstances, the police were justified in their warrantless entry of McKinney's apartment. The exigency in this case was created by the officers' observations that led them to believe that

an act of domestic violence had occurred.  Specifically, these observations were sufficient to create a "reasonable belief" that the woman who had suddenly fallen silent was in need of the officers' assistance.  **Potts**, **Galvin**, *supra*.  These exigent circumstances allowed the officers to take "immediate action" and enter the home to prevent further harm.  Thus, in this limited circumstance, the officers were permitted to enter McKinney's apartment without a warrant.  **Wright**, *supra*.

Having concluded that the officers' initial entry into McKinney's apartment was permitted pursuant to exigent circumstances, we turn to the legitimacy of the officers' "sweep" of McKinney's apartment that ultimately uncovered narcotics.

> Under emergent circumstances, protective sweeps are a well-recognized exception to the warrant requirement.  In **Commonwealth v. Crouse**, 729 A.2d 588 (Pa. Super. 1999), this Court held that properly conducted protective sweeps violate neither the Fourth Amendment [to] the United States Constitution nor Article I, Section 8 of the Pennsylvania Constitution.

**Commonwealth v. Witman**, 750 A.2d 327, 335-36 (Pa. Super. 2000) (citation modified).  "A protective sweep is 'a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others.'"  **Commonwealth v. Taylor**, 771 A.2d 1261, 1267 (Pa. 2001) (quoting **Maryland v. Buie**, 494 U.S. 325, 327 (1990)).

> **Buie** sets forth two levels of protective sweeps.  **Buie**, 494 U.S. at 334.  The two levels are defined thus:

> [A]s an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on those on the arrest scene.

> ***Id.*** Pursuant to the first level of a protective sweep, without a showing of even reasonable suspicion, police officers may make cursory visual inspections of spaces immediately adjacent to the arrest scene, which could conceal an assailant. The scope of the second level permits a search for attackers further away from the place of arrest, provided that the officer who conducted the sweep can articulate specific facts to justify a reasonable fear for the safety of himself and others.

***Taylor***, 771 A.2d at 1267 (citations modified).

Instantly, there is no allegation that the officers were present at McKinney's apartment in order to execute an arrest warrant. Moreover, McKinney was not under arrest when the police initially entered and investigated the apartment. Therefore, the instant "protective sweep" must be supported by "articulable facts" that "justify a reasonable fear for the safety of himself and others." ***Taylor***, *supra*.

***Potts*** is highly instructive in this context. In ***Potts***, police officers, responding to a domestic dispute, heard screaming and yelling emanating from the appellant's apartment. 73 A.3d at 1278. Officers knocked on the apartment door for approximately twenty seconds before the yelling and screaming stopped. When no one answered the door, the officers drew their weapons. Finally, the victim in ***Potts*** opened the door, appearing

- 9 -

"distraught" and "disheveled." *Id.* "She was . . . sweating, crying, and breathing heavily." *Id.* One of the officers then saw the appellant run into a bedroom and shut the bedroom door. When asked to identify the man who had just run into the bedroom, the victim identified the appellant as her boyfriend. The officers asked the appellant to come out of the bedroom. *Id.* The appellant came out of the bedroom "sweating badly, seem[ing] very scared, and . . . shaking." *Id.* At this point, the officers became concerned for their own safety, as well as for the safety of the victim. *Id.* at 1279.

Prior to the appellant's arrest, one of the officers entered the bedroom to perform a protective sweep in order to check for other people or weapons that might pose a threat to the victim or to officers. *Id.* Upon entry into the bedroom, the officer discovered, and eventually seized, an open suitcase filled with a large amount of marijuana. *Id.* The appellant filed a motion to suppress the evidence obtained as the fruits of an allegedly illegal protective sweep, which the trial court subsequently denied after a hearing. *Id.* On appeal, this Court concluded that the totality of the circumstances justified the police officers' reasonable belief that they needed to "sweep" the appellant's apartment to ensure that the victim was not in any further danger. *Id.* This Court rejected the appellant's argument that, because the appellant had not yet been arrested the officers were not permitted to conduct a protective sweep, stating that "[i]f a suspect is dangerous, he is no less dangerous simply because he is not arrested." *Id.* at 1282 (quoting *Michigan v. Long*, 463 U.S. 1032, 1049-50 (1983)). Specifically, we

- 10 -

quoted the United States Supreme Court in **Long**, which held that "[i]f, while conducting a [protective sweep], the officer should, as here, discover contraband other than weapons, he clearly cannot be required to ignore the contraband." **Id.** Thus, in **Potts**, we concluded that "the officers were not required to ignore the marijuana they saw in [a]ppellant's bedroom while conducting the sweep." **Id.** at 1281-82.

Here, the record contains ample articulable facts which, when taken together with the rational inferences drawn from those facts, would justify an officer's reasonable fear for the safety of others. **Potts**, 73 A.3d at 1282 (citation omitted). Specifically, the exigent circumstances that justified the officers' warrantless entry into the apartment, also justified the officers' protective sweep. **See** supra at 6-8. The fact that McKinney had not yet been arrested at the time of the protective sweep is immaterial. **Potts**, **Long**, supra. Furthermore, the investigating officers were not required to ignore the marijuana that they saw on appellant's living room table while conducting the sweep. **Id.**; **see** N.T. Suppression at 25-27 (identifying where the police officers initially saw the narcotics). Based upon the foregoing discussion, the record supports the trial court's denial of McKinney's motion to suppress.[1] **Id.**

_____

[1] The police officers' seizure of the evidence at issue would also be permitted under the "plain view doctrine." Under exigent circumstances, the plain view doctrine is an exception to the warrant requirement. **Horton**, 496 U.S. at 133. The plain view doctrine permits the warrantless seizure of
*(Footnote Continued Next Page)*

In his second issue, McKinney alleges that there was insufficient evidence for the trial court to conclude that McKinney was in constructive possession of the marijuana for which he was subsequently charged and convicted. Brief for McKinney at 12.

When reviewing challenges to the sufficiency of the evidence, we evaluate the record in the light most favorable to the Commonwealth as the verdict winner, giving the Commonwealth the benefit of all reasonable inferences to be drawn from the evidence. ***Commonwealth v. Duncan***, 932 A.2d 226, 231 (Pa. Super. 2007) (citation omitted). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." ***Id***. (quoting ***Commonwealth v. Brewer***, 876 A.2d 1029, 1032 (Pa. Super. 2005), *appeal denied*, 887 A.2d 1239 (Pa. 2005)). Moreover, this Court may not substitute its judgment for that of the

*(Footnote Continued)* _____

an object when: (1) an officer views the object from a lawful vantage point; (2) it is immediately apparent to the officer that the object is incriminating; and (3) the officer has a lawful right of access to the object. ***Commonwealth v. Brown***, 23 A.3d 544, 552 (Pa. Super. 2011) (citing ***Horton***, 496 U.S. at 136-37). In the instant case and as noted above, the police officers had a lawful right of access to the McKinney's apartment due to exigent circumstances. ***See*** *supra* at 8. Upon performing a protective sweep and without having to open any doors, the officers noticed two transparent sandwich bags "in plain view" on McKinney's living room table, which contained what the officers immediately suspected to be marijuana. N.T. Suppression at 25-27. The record reflects that the officers viewed the evidence from a lawful vantage point and that its incriminating nature was immediately apparent. ***See Brown***, 23 A.3d at 552.

factfinder, and where the record contains support for the convictions, they may not be disturbed. *Id*. Lastly, the finder of fact is free to believe some, all, or none of the evidence presented. *Commonwealth v. Hartle*, 894 A.2d 800, 804 (Pa. Super. 2006).

A defendant is guilty of possession of a small amount of marijuana if he possesses less than thirty grams of marijuana for personal use. 35 P.S. § 780-113(a)(31). "If the Commonwealth is unable to prove that a suspect had a controlled substance on his person, the Commonwealth may show constructive possession of illicit drugs." *Commonwealth v. Davis*, 480 A.2d 1035, 1045 (Pa. Super. 1984) (citation omitted).

> The existence of constructive possession of a controlled substance is demonstrated by the ability to exercise a conscious dominion over the illegal substance: the power to control the [illegal substance] and the intent to exercise that control. An intent to maintain a conscious dominion may be inferred from the totality of the circumstances. Thus, circumstantial evidence may be used to establish constructive possession of the illegal substance. Additionally, [the Pennsylvania Supreme Court] has recognized that constructive possession may be found in one or more actors where the item in issue is in an area of joint control and equal access.

*Commonwealth v. Johnson*, 26 A.3d 1078, 1093-94 (Pa. 2011) (citations omitted, minor modifications to capitalization). "[K]nowledge of the location of the narcotics and intent to exercise control over such may be inferred from access to such drugs and the other surrounding circumstances, even though others have equal access thereto." *Davis*, 480 A.2d at 1045 (citation omitted).

- 13 -

*Commonwealth v. Mudrick*, 507 A.2d 1212 (Pa. 1986), is instructive in the instant case. In *Mudrick*, local police officers and narcotics agents arrived at the appellee's girlfriend's house in order to serve a fugitive warrant on the girlfriend. *Id.* The appellee answered the door, and directed officers to the girlfriend's bedroom. *Id.* Officers entered the bedroom and placed the girlfriend under arrest. *Id.* The appellee told officers that he lived with his girlfriend and that they were "going to be married." *Id.* at 1212-13. Officers then observed a box of marijuana on the living room coffee table. *Id.* at 1213. After obtaining a search warrant, the officers performed a search of the residence, which produced marijuana from the living room coffee table as well as cocaine in the bedroom and study. *Id.* The appellee was arrested, and subsequently convicted of various charges. This Court reversed the trial court's judgment of sentence,[2] and the Commonwealth appealed. *Id.* at 1212. Our Supreme Court reinstated the judgment of sentence, holding that "even absent a marital relationship[,] constructive possession may be found in either or both actors if contraband is found in an area of joint control and equal access." *Id.* at 1212, 1214. Because the appellee and his girlfriend shared control and access of the whole residence, the court noted that the jury could infer the "[appellee's]

_____

[2]    *Commonwealth v. Mudrick*, 508 A.2d 341 (Pa. Super. 1984) (table).

constructive possession of the marijuana openly accessible to him on the living room coffee table." *Id.* at 1214.

In the instant case, the record reflects that the evidence presented by the Commonwealth was sufficient to establish McKinney's constructive possession of a small amount of marijuana. Upon entry into the apartment, officers discovered two bags of marijuana in plain view on a living room coffee table. N.T. Suppression at 25. The record indicates that McKinney lived at the residence where the drugs were found. *Id.* at 28. One of the responding officers testified that McKinney conceded, both on the night in question and in prior dealings, that he lived at the apartment in question. *Id.* Upon approaching McKinney's apartment door, officers heard a male voice say either "don't fucking answer my door or don't fucking open my door." *Id.* at 10-11. When McKinney opened his door, he told the officers that "[they weren't] fucking coming into [his] apartment." *Id.* at 12. Furthermore, McKinney's personal effects were inside the apartment at the time of the incident. *Id.* at 28.

McKinney testified that, although his girlfriend had her own apartment, she had been living with McKinney in his apartment prior to and on the night of the incident in question. Notes of Testimony—Trial ("N.T. Trial"), 10/15-16/2014, at 140-41. Although McKinney disclaimed possession of the marijuana, his denial offered no alternative explanation of ownership. Furthermore, the jury was entitled to disbelieve McKinney's testimony. In finding McKinney guilty pursuant to 35 P.S. § 780-113(a)(31), the jury

clearly chose to disbelieve McKinney. Precedent forbids us from disturbing such credibility determinations in the context of sufficiency of the evidence.

Based upon the foregoing, there was sufficient evidence to allow the jury to conclude that McKinney was in constructive possession of the marijuana in his living room.[3] Thus, McKinney's second claim fails.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/7/2014

---

[3] McKinney has offered no alternative explanation for the presence of the marijuana in his apartment. However, McKinney does suggest that his girlfriend "had equal access to the marijuana." McKinney's Brief at 26. Assuming, *arguendo*, that McKinney and his paramour had equal access to the living room, **either** party could have been considered in constructive possession of the marijuana. **Mudrick**, 507 A.2d at 1212-14.