507 A.2d 1212

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Donald John MUDRICK, Appellee.**

Supreme Court of Pennsylvania.

Argued Jan. 21, 1986.

Decided April 10, 1986.

James F. Marsh, Dist. Atty., John B. Dunn, Asst. Dist. Atty., Monroe Co., for appellant.

John P. Lawler, Monroe Co., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

HUTCHINSON, Justice.

The Commonwealth appeals by allowance a Superior Court order reversing appellee's convictions for possession of marijuana, possession of cocaine, and possession of marijuana and cocaine with intent to deliver. 508 A.2d 341 (1984). The only issue presented is whether the evidence presented by the Commonwealth was sufficient to establish constructive possession. We hold that it was and reverse Superior Court.

Early in the afternoon of May 8, 1981, local police officers and narcotics agents from the Attorney General's office arrived at the residence of a Sandra Dietz, 2103 Vacation Lane, Stillwater Lake, Pocono Summit, Pennsylvania. They intended to serve a New Jersey fugitive warrant on her. They knocked; appellee answered the door. After the officers explained their purpose, he told them that Ms. Dietz was sleeping in the bedroom and directed them to it. Ap-

pellee was wearing only a pair of blue jeans. Some of the officers entered the bedroom, woke her, and placed her under arrest. Ms. Dietz was taken to the District Magistrate after dressing and using the bathroom. Appellee told another officer that he lived with Ms. Dietz and they were going to be married. He also mentioned that one of the dogs on the premises was his. The officers saw a box of what they believed to be marijuana on the living room coffee table. Appellee was ordered to sit down; he sat within two feet of the contraband. One officer remained on the premises with appellee while others obtained a search warrant. While waiting for the officers to return, appellee got up, walked into the kitchen and helped himself to a cold drink from the refrigerator. At about 3:00 P.M. the officers returned with a search warrant for the residence. In addition to the box on the coffee table, they found what proved to be cocaine in the bedroom and the study. The suspected contraband was confiscated and appellee was arrested. He retrieved his clothes from the bedroom in which Dietz had been sleeping. This was the only room in the residence in use as a bedroom. Subsequent chemical analysis showed that the substances seized were marijuana and cocaine.

At trial, appellee presented evidence that he actually lived in Blakeslee in the home of one Patrick Simonik, and that he paid room and board to Simonik and took meals there. A jury found appellee guilty of possession of marijuana and cocaine[1] and possession of marijuana and cocaine with intent to deliver.[2] Post-trial motions were denied. Monroe County Common Pleas imposed a total sentence of five to twelve months. Superior Court reversed. In a memorandum opinion, the panel held that the Commonwealth proved no more than appellee's presence at the scene, and the evidence was insufficient to establish constructive possession.

1. Controlled Substance, Device and Cosmetic Act, Act of April 14, 1972, P.L. 233, No. 64, § 13, *as amended,* 35 P.S. § 780–113(a)(16).
2. *Id.,* 35 P.S. § 780–113(a)(30).

When reviewing for sufficiency of the evidence, an appellate court may not substitute its judgment for the jury's. *Commonwealth v. Bachert,* 499 Pa. 398, 453 A.2d 931 (1982), *cert. denied,* 460 U.S. 1043, 103 S.Ct. 1440, 75 L.Ed.2d 797 (1983). It must view the evidence in the light most favorable to the verdict winner, here the Commonwealth, and draw all reasonable inferences that evidence permits in favor of the verdict winner. *Commonwealth v. Lovette,* 498 Pa. 665, 450 A.2d 975, *cert. denied,* 459 U.S. 1178, 103 S.Ct. 830, 74 L.Ed.2d 1025 (1983).

■ Clearly the Commonwealth could not show actual possession of the contraband. Its case was based on constructive possession. Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as "conscious dominion." *Commonwealth v. Davis,* 444 Pa. 11, 15, 280 A.2d 119, 121 (1971). We subsequently defined "conscious dominion" as "the power to control the contraband and the intent to exercise that control." *Commonwealth v. Macolino,* 503 Pa. 201, 206, 469 A.2d 132, 134 (1983). Though these tests may be helpful and logical in the abstract, application to actual factual situations, particularly when multiple actors are involved, has proven difficult for our lower courts in cases involving controlled substances located on premises in joint possession but not on the actual person of any of the parties entitled to occupy those premises.

To aid application, we have held that constructive possession may be established by the totality of the circumstances. *Commonwealth v. Fortune,* 456 Pa. 365, 318 A.2d 327 (1974). We took a further step toward resolving these problems in *Commonwealth v. Macolino, supra.* In *Macolino,* contraband and otherwise legal items used in the drug trade[3] were found in the common bedroom of the

3. A drug packaging device and an electronic telephone surveillance detector were found in plain view in the bedroom. The contraband

Macolinos, a married couple. We held that "constructive possession can be found in one defendant when both the husband and wife have equal access to an area where the illegal substance or contraband is found." 503 Pa. at 208, 469 A.2d at 135. *See also Commonwealth v. Carroll,* 510 Pa. 299, 507 A.2d 819 (1986).

█ Though the facts here do not precisely mirror those in *Macolino,* they are similar and the issue again concerns constructive possession in an area of joint control. We hold today that even absent a marital relationship constructive possession may be found in either or both actors if contraband is found in an area of joint control and equal access. The marital relationship *per se* was not critical to the *Macolino* analysis; shared access to and control of the area where the contraband was found was critical.

█ Here there was evidence that appellee lived in the residence [4] and shared the bedroom with Ms. Dietz.[5] From this evidence, the factfinder could find joint control over and equal access to the area where the cocaine was found, the bedroom. Given the totality of the circumstances, *i.e.,* joint control and equal access and evidence that the cocaine was found in plain view, the jury could have found constructive possession.

█ The box of marijuana found on the living room coffee table can be analyzed in the same manner. Though one's bedroom is generally considered to be a more private area than the living room or kitchen, we do not find that distinction persuasive here. There was no evidence that anyone other than appellee and Ms. Dietz occupied the premises or that anyone else was present when the officers arrived.

and drug books were located in the closet. A cocaine cutting substance was found in the attic.

4. Appellee told an officer that he lived there; he claimed ownership of one of the dogs on the premises; some of his clothes were in the premises; and he freely helped himself to the refrigerator. In addition, appellee told the officer that he planned to marry Ms. Dietz. N.T., July 6, 1982, 14–21.

5. Appellee retrieved his clothes from the bedroom. N.T. 21. No other room in the residence was in use as a bedroom. N.T. 10–11.

The control and access enjoyed by each actor in the bedroom, therefore, seems undiminished in the living room. The jury could properly find that Ms. Dietz and appellee not only shared the bedroom but the whole residence. Analyzing all the circumstances, it could infer appellee's constructive possession of the marijuana which was openly accessible to him on the living room coffee table.

Therefore, the order of Superior Court is reversed and the judgments of sentence imposed by the Monroe County Court of Common Pleas are reinstated.

ZAPPALA, J., files a dissenting Opinion.

ZAPPALA, Justice, dissenting.

I am disturbed by the majority's willingness, without caution or comment, to allow a "legal fiction" to support a criminal conviction. I do not challenge the validity of "constructive possession" as a precept of the criminal law. There are circumstances in which the aggregate of the evidence permits the conclusion that possession has been proven beyond a reasonable doubt even though evidence directly connecting the defendant with the contraband is lacking. This is no fiction, but rather a realistic assessment of the entire body of evidence. As used by the majority, however, "constructive possession" is indeed a fiction, reducing the quantum of proof necessary for the Commonwealth to establish its case.

Properly applied, constructive possession permits the Commonwealth to rely on proof of "conscious dominion" over an object rather than requiring a demonstration of immediate physical control. We rephrased this most recently as "the power *to control the contraband* and the intent to exercise *that control.*" *Commonwealth v. Macolino*, 503 Pa. 201, 206, 469 A.2d 132, 134 (1983) (emphasis added). So long as the evidence relates to the power and intent to control the contraband, I agree that it can support an inference of possession of the contraband. Here, however, the majority permits evidence which goes only to the Appellee's power to control *the premises* to support an inference

of possession of *the contraband.* All of the minutiae cited by the majority at page 1214 of the Opinion—the shared bedroom, the dog, the clothes, the refrigerator—are relevant to proving only the Appellee's power with respect to the area where the contraband was found. No evidence is cited, for none is present in the record, which is relevant to proving the Appellee's intent to control the contraband. In truth, the Appellee's conduct with regard to the contraband in plain view during the search of the residence demonstrates more an unconscious disregard of the contraband than a conscious dominion over it.[1] I abhor this loose application of language setting out standards of proof in a criminal context. Where before the Commonwealth was bound to show "the power to control the contraband *and* the intent to exercise that control," *Id.,* now it is apparently sufficient to prove only "shared access to and control of the area where the contraband was found." On this basis I fail to see how this case is distinguishable from *Commonwealth v. Tirpak,* 441 Pa. 534, 272 A.2d 476 (1971); *Commonwealth v. Fortune,* 456 Pa. 365, 318 A.2d 327 (1974), and *Commonwealth v. Chenet,* 473 Pa. 181, 373 A.2d 1107 (1977) and must conclude that they have been overruled *sub silentio.*

In *Macolino* the Court was wary of providing "a privileged sanctuary for the storage of illegal contraband," noting that without the concept of constructive possession "simply by storing contraband in a place controlled by more than one party, a spouse, roomate [sic], partner, would render all impervious to prosecution." 503 Pa. at 210, 469 A.2d at 136. Nevertheless, in that case we did not rely on Macolino's control of the residence as establishing control of the contraband, but were careful to weigh that evidence "in conjunction with other evidence sufficient to establish a

---

1. I suspect that the majority would also permit an attempt to conceal contraband during a search to be considered as evidence of guilt in a possessory charge. If so, there would appear to be no sure way for an innocent resident or occupant of a room to disassociate himself from its contents, for he is implicitly demonstrating an intent to control whether he acknowledges or ignores the contents.

link between Carol Macolino and the illegal substance." *Id.*, 503 Pa. at 209, 469 A.2d at 136. By abandoning the need for such other evidence, the majority creates a grave risk of an unscrupulous cohabitant intentionally or unintentionally exposing his innocent partner to criminal liability simply by storing contraband in a place over which there is "shared access and control." The burden has been effectively shifted to the defendant to disprove his intent to exercise control over the contraband, a result which offends the most basic principles of our system of justice.

I would affirm the Order of the Superior Court.