J-S05009-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DAVID CRESPO, | |
| Appellant | No. 1340 MDA 2016 |

Appeal from the Judgment of Sentence Entered April 13, 2016
In the Court of Common Pleas of Lebanon County
Criminal Division at No(s): CP-38-CR-0001677-2015

BEFORE:  BENDER, P.J.E., PANELLA, J., and PLATT, J.[*]

MEMORANDUM BY BENDER, P.J.E.:          **FILED FEBRUARY 17, 2017**

Appellant, David Crespo, appeals from the judgment of sentence of 2-6 years' incarceration, following his conviction for possession with intent to deliver ["PWID"] marijuana wax.[1]  Appellant challenges the sufficiency and weight of the evidence supporting his conviction.  After careful review, we affirm.

The trial court summarized the facts adduced at trial as follows:

> Trooper Jared Fluck of the Pennsylvania State Police ("PSP") Drug Law Enforcement Division was conducting a routine proactive parcel check at a UPS shipping facility on July 8, 2015.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 35 P.S. § 780-113(a)(30) (prohibiting "the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under [The Controlled Substance, Drug, Device and Cosmetic Act]").

Trooper Fluck was checking for parcels containing controlled substances which are sometimes shipped through third party carriers, such as UPS. Trooper Fluck became suspicious that a package addressed to [Appellant] might contain a controlled substance. The package was addressed to [Appellant] at 121 East Cumberland Street in the City of Lebanon. The return label indicated that it had been sent from a UPS location in California, which is known to be a source state for narcotics coming from Mexico. The package was very rigid, weighed 54 pounds, and was almost completely sealed in clear packing tape. After a K-9 unit indicated the presence of a controlled substance in the package, a search warrant was obtained. When it was opened, the package was found to contain 35.77 pounds of marijuana wax in a tote bag wrapped in numerous layers of vacuum-sealed bags and scented baby wipes and surrounded by spray foam insulation.

Trooper Jason Reed, another member of the PSP Drug Law Enforcement Division, obtained a search warrant for [Appellant]'s home. The troopers then conducted a "controlled delivery" of the package to [Appellant].[2] Trooper Scott Fidler assisted the investigation by posing as the UPS delivery person. He took the box to [Appellant]'s address while the other troopers observed from nearby. When Trooper Fidler arrived at the building, a note on the front window directed all deliveries to the side door. Trooper Fidler went down an alley [next to] the building and knocked on the side door. When there was no answer, he opened the unlocked door, entered the foyer, and announced that he had a UPS delivery. [Appellant] came out of a second-floor apartment door. When Trooper Adler asked if he was David Crespo, [Appellant] responded that he was and that he was expecting a box. [Appellant] looked at the box momentarily and then directed Trooper Fidler to leave it on the second-floor landing next to him by his door. [Appellant] then appeared to begin texting on his cellphone.

[2] Trooper Jared Fluck explained that a "controlled delivery" occurs when a trooper poses as a delivery person for UPS or another third-party carrier and makes delivery of a package containing contraband to the intended recipient.

As Trooper Fidler turned to leave, [Appellant] went down the stairs. Trooper Fidler followed approximately ten feet behind [Appellant]. A woman came out of a door on the first floor and asked what was going on. [Appellant] told her that he had just

received a package and not to worry about it. [Appellant] then held the door open for Trooper Fidler and the two exited the building. [Appellant] was around five feet behind Trooper Fidler at that point. At no time did [Appellant] say anything about the package to Trooper Fidler. Trooper Fluck arrested [Appellant] and a search of [Appellant]'s home was conducted. No articles indicating drug use or drug dealing were located during the search. When [Appellant]'s cellphone was searched, the troopers found that his contacts were all listed under their "street[ ]names."[3] The cellphone contained an encryption app which prevented the troopers from viewing his calls or text messages.

[3] Trooper Fluck explained [that] street[ ]names are false names used to hide a contact's true identity and are commonly used in drug trafficking.

Mary Ann Roth, the owner of the building, also testified at the trial. She explained that [Appellant] lived in the second-floor apartment of the building with her daughter, Charelle Hess, their three children, and Roth's other children. Roth and her husband lived in the first-floor apartment. [Appellant] was not working at the time and he and Hess were receiving food stamps. They were not paying rent for the apartment. She was the woman who came out of the first-floor door after Trooper Fidler had delivered the package to [Appellant]. Roth testified that neither she nor her husband was expecting a package and that [Appellant] did not seem surprised to have received one. When she asked [Appellant] what was going on, he said "this man just has a package for me." She did not hear [Appellant] say anything to Trooper Fidler about the package not being for him.

Charelle Hess also testified at the trial. She also indicated that [Appellant] was not working at the time of this incident. She acknowledged that [Appellant] had been complaining that he was expecting something to be delivered on the day before this incident, but that he gave no details. On cross-examination, she claimed that [Appellant] had said he was waiting for a gaming subscription. However, she admitted that in a written statement she had given, she had merely indicated that [Appellant] had said he was waiting for something in the mail and that he was not happy that it had not arrived.

Trooper Reed was qualified as an expert in the area of possession with intent to deliver controlled substances. Trooper

Reed opined that [Appellant] possessed the marijuana wax with the intent to deliver based on a number of factors. The package was addressed to [Appellant] and he was expecting its arrival. Trooper Reed explained that [Appellant] was the "middleman" in the chain of distribution. The "middleman" would receive the drug from the "source of supply" (the person sending the drugs from California in this case)[,] … who would then complete the drug delivery to the dealer. Trooper Reed determined that [Appellant] was the "middleman" since no items of drug use or drug packaging for delivery were located in his home and [Appellant] used his cellphone immediately upon delivery of the package. Trooper Reed also explained that it is common for a third-party shipper, such as UPS, to be used so that the original sender could remain anonymous. He also noted the sheer weight of the marijuana wax[,] 35.77 pounds. This amount would last a user approximately two years, but would not be purchased for personal consumption because its potency would dissipate over time. Trooper Reed also noted that the marijuana wax had a value of up to 1.2 million dollars. [Appellant] would not have been able to purchase this amount of drugs as he was not employed and was on food stamps at the time. His poor financial status was reflected in the contents of his apartment, as the troopers found no luxury items during their search of the premises. In addition, the encryption app on [Appellant]'s phone is commonly used in drug deliveries.

Trial Court Opinion (TCO), 8/8/16, at 2-6.

Appellant was charged with PWID, and subsequently convicted after a jury trial held on February 10, 2016. On April 13, 2016, the trial court sentenced Appellant to 2-6 years' incarceration. Appellant filed a timely post-sentence motion ("PSM") challenging the sufficiency and weight of the evidence, which was denied by the trial court on August 8, 2016. Appellant then filed a timely notice of appeal on August 11, 2016, and a timely, court-ordered Pa.R.A.P. 1925(b) statement on September 9, 2016. On September 21, 2016, the trial court issued an order indicating that the issues raised in

Appellant's Rule 1925(b) statement were adequately addressed in the court's August 8, 2016 opinion addressing Appellant's PSM.

Appellant now presents the following questions for our review:

[1.] Whether [Appellant]'s motion for acquittal should be granted due to the Commonwealth's failure to present sufficient evidence at trial to prove the possession of the marijuana wax?

[2.] Whether the jury's verdict was against the weight of the evidence as it pertains to possession of the marijuana wax?

Appellant's Brief at 4.

Appellant's first claim concerns the sufficiency of the evidence. Specifically, Appellant contends that the evidence admitted at trial was insufficient to demonstrate that he knowingly or intentionally possessed the marijuana wax discovered in the UPS package.

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000) (internal citations omitted).

As the facts cited above indicate that Appellant never physically handled the UPS package, his conviction necessitated proof of his constructive possession of the controlled substance contained within it.

As our [Supreme] Court has noted: "[c]onstructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement." *Commonwealth v. Mudrick*, 510 Pa. 305, 308, 507 A.2d 1212, 1213 (1986). The existence of constructive possession of a controlled substance is demonstrated by "the ability to exercise a conscious dominion over the illegal substance: the power to control the [illegal substance] and the intent to exercise that control." [*Commonwealth v.*] *Valette*, 531 Pa. [384,] 388, 613 A.2d [548,] 550 [(1992)](quoting *Commonwealth v. Macolino*, 503 Pa. 201, 206, 469 A.2d 132, 134 (1983)). An "intent to maintain a conscious dominion may be inferred from the totality of the circumstances." *Macolino*, 503 Pa. at 206, 469 A.2d at 134. Thus, circumstantial evidence may be used to establish constructive possession of the illegal substance. *Id.* Additionally, our [Supreme] Court has recognized that "[c]onstructive possession may be found in one or more actors where the item in issue is in an area of joint control and equal access." *Valette*, 531 Pa. at 388, 613 A.2d at 550.

*Commonwealth v. Johnson*, 26 A.3d 1078, 1093–94 (Pa. 2011).

Instantly, Appellant argues that the Commonwealth failed to prove that he knew the UPS package contained a controlled substance. In the framework of the constructive possession standard, Appellant contends that, while sufficient evidence was offered to establish his conscious dominion over the package itself in a general sense, the evidence was still not sufficient to demonstrate that he was conscious of the package's contents. The trial court rejected Appellant's sufficiency claim, concluding that there was sufficient circumstantial evidence demonstrating Appellant's knowledge of the contents of the package:

The package was addressed to [Appellant] at his home. [Appellant] told Trooper Fidler that he was expecting a package. Heller also testified that [Appellant] was expecting a delivery and that he was upset when it had not arrived on the day prior to this incident. [Appellant] looked at the package and then

- 6 -

exercised control over it by instructing Trooper Fidler where to place it. [Appellant] then left the package immediately outside the door to his apartment. [Appellant] told Roth that he had just received a package. [Appellant] walked outside in close proximity to Trooper Fidler and never voiced any concern that the package was not for him. Viewed in the light most favorable to the Commonwealth, we find that this evidence was sufficient to support the jury's finding that [Appellant] had knowledge of the contents of the package and was in possession of the marijuana wax.

TCO at 8-9.

We agree with the trial court. Viewed in a light most favorable to the Commonwealth, these circumstantial facts adequately demonstrate that Appellant knew the package contained marijuana wax. Additionally, it is virtually inconceivable that approximately $1.2 million worth of marijuana wax was *accidentally* shipped to Appellant at his home address. It is even less likely that such a colossal mistake just happened to occur at the same time Appellant was anxiously awaiting the delivery of a package.

In his brief, Appellant attempts to contest the inferences of his guilt as drawn from a number of the facts established at trial. In doing so, he offers alternative, innocent explanations for those facts. However, such argumentation ignores our standard of review, as the evidence is to be viewed "in the light most favorable to the verdict winner," not in a neutral light, or in a light most favorable to Appellant. ***Widmer***, 744 A.2d at 751. Accordingly, we conclude that the evidence admitted at Appellant's trial was sufficient to establish his knowledge that the package he received contained a controlled substance.

Next, Appellant asserts that the guilty verdict was against the weight of the evidence. Specifically, he argues that "the jury placed too great a weight on the testimony of the Commonwealth's expert witness, Tpr. Reed." Appellant's Brief at 13.

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:
>
>> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:
>
>> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (internal citations omitted).

Appellant's weight-of-the-evidence argument is cursory and contains little more than offerings of alternative, innocent inferences to be drawn from the evidence, as he attempted to do in the context of his sufficiency argument. Here, the trial court reasoned:

> [Appellant] charges that the jury placed too great a weight on Trooper Reed's expert testimony to establish that [Appellant] knew what was in the package which was delivered to him. [Appellant] argues that the facts which formed the basis for Trooper Reed's opinion were not suspicious when viewed separately. We also disagree with this argument. Trooper Reed based his opinion on the totality of the many factors which pointed to [Appellant's] being the "middleman" in a drug trafficking situation. The jury obviously found Trooper Reed's testimony to be credible and we find no reason to disturb this finding.

TCO at 10.

Indeed, Appellant provides no case law supporting the notion that we are to view facts in isolation, rather than in the context of other attendant facts. The proposition itself is not logical, and thus, the trial court's focus on the convergence of facts, rather than viewing the inferences flowing from individual facts alone, was entirely proper. It is the confluence of these circumstances which bolsters their individual significance as to Appellant's guilt. Thus, it is Appellant's focus on individual facts and circumstances, in isolation from one another, which is improper. Accordingly, we conclude

that the trial court did not abuse its discretion when it declined to grant Appellant a new trial base on his weight-of-the-evidence-claim.

Judgment of sentence **affirmed**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/17/2017