J-S47034-18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| TERRELL DEVON FLOYD, | : | |
| | : | |
| Appellant | : | No. 116 WDA 2018 |

Appeal from the Judgment of Sentence August 1, 2017
In the Court of Common Pleas of Armstrong County
Criminal Division at No(s): CP-03-CR-0000558-2016

BEFORE:   OLSON, MCLAUGHLIN, and STRASSBURGER, JJ.*

MEMORANDUM BY STRASSBURGER, J.:          **FILED SEPTEMBER 06, 2018**

Terrell Devon Floyd (Appellant) appeals from the judgment of sentence of 30 to 60 months of incarceration imposed following his convictions for possession of a controlled substance, possession with intent to deliver (PWID) a controlled substance, and possession of drug paraphernalia.  We affirm.

The trial court summarized the relevant factual history of this matter as follows.

> On June 27, 2016, Detective Frank Pitzer was conducting surveillance of Staley's Motel in Kittanning, Armstrong County, Pennsylvania.  At the time, Detective Pitzer was the Chief Armstrong County Detective and a regional coordinator of the Armstrong County Narcotics Enforcement Team ("ARMNET").  Detective Pitzer had conducted surveillance of Staley's Motel on many prior occasions and knew it to be a location of frequent drug activity.  That day, he received information that drug activity was again occurring at the motel, this time in room "8" specifically.  Detective Pitzer set up his surveillance in a marked police vehicle in the parking lot of a convenience store located across the highway.  From his vantage point, he could see clearly the exterior doorways of the motel rooms, including that of room 8.  All of the

* Retired Senior Judge assigned to the Superior Court.

rooms of the motel are ground-level. The doorways open to a sidewalk and the motel's gravel parking lot. Each room also has a rear exterior window.

Between 10:00 a.m. and 11:00 a.m., Detective Pitzer observed a white car pull into the motel driveway and park directly in front of room 8. He then observed [Appellant] and a female, Gabrielle Simms, come out of room 8 and approach the vehicle. The door to room 8 was open when the vehicle arrived. Detective Pitzer recognized [Appellant] and Simms, having had prior experiences with both. [Appellant] stood at the driver's window of the vehicle and Simms at the passenger window. A conversation ensued during which both [Appellant] and Simms leaned into the vehicle. The female driver made movements during the conversation, but Detective Pitzer did not observe exactly what was going on inside. Given his training in drug investigations and his prior experience with Staley's Motel in particular, Detective Pitzer suspected that drug activity was afoot. After approximately 5 minutes, the white vehicle left, and [Appellant] and Simms returned to room 8.

Detective Pitzer radioed Sheriff William Rupert and Deputy Sheriff Jason Hufhand, both of whom are ARMNET detectives and were in the area for backup, to advise that he was going to conduct an investigatory stop of the white car. Detective Pitzer followed the white car and conducted a traffic stop not far from Staley's along State Route 66. Sheriff Rupert and Deputy Huf[h]and soon arrived to assist. Detective Pitzer first spoke with the female driver of the vehicle. He then spoke with the male passenger who exited the vehicle to speak with the officers. Detective Pitzer searched the male passenger and found no drugs or contraband. The male passenger then advised Detective Pitzer that there were two black males in room 8 with drugs. He indicated that one went by the nickname of "Yikes" and the other by "J."[6] Detective Pitzer knew from his prior experience that [Appellant's] nickname was "Yikes." Detective Pitzer requested consent to search the vehicle from the female driver, who declined. The officers then ended the stop and drove back to Staley's.

_____

[6] Detective Pitzer knew that there were several outstanding drug-related felony arrest warrants for an individual known

as "J." The officers were attempting to find "J" on the day they observed [Appellant] at Staley's. The male passenger's description of the second black man in room 8 matched the description of the individual with the outstanding warrants.

When the officers returned and pulled into the motel parking lot, the door to room 8 again was open. Detective Pitzer observed an individual look out the door and then shut it as the officers approached. Having had prior experience with drug-related apprehensions at Staley's, Detective Pitzer asked Deputy Hufhand to go around the back of the motel to watch the bathroom window. Detective Pitzer and Sheriff Rupert then approached the door to room 8. At that point, Deputy Hufhand radioed and advised that someone in the bedroom was going to the bathroom. Detective Pitzer knocked on the door and it opened. Deputy Huf[h]and radioed again to advise that a black individual with tattoos on his arm had dropped a green Crown Royal[] bag out of the bathroom window and was going back into the bedroom. This individual would later be identified as John Weathersby.

When the front door opened, Detective Pitzer observed the inside of room 8, which was very small. He immediately saw [Appellant] standing between the two beds in the room, which were approximately two feet apart. Weathersby was walking out of the bathroom and Simms was lying on the bed behind [Appellant]. Detective Pitzer also immediately noticed a digital scale sitting on the shelf of the headboard of one of the beds, located within an arm's reach of [Appellant]. The cover had been removed and a white powdery residue, later identified as Fentanyl, was on top of the scale. Detective Pitzer also observed the corner of a plastic baggie sticking out from between the mattress and box springs of the bed on which Simms was lying. The contents of that bag [were] later identified to be cocaine. Detective Pitzer recognized that Weathersby was not the "J" individual for whom the officers had been looking.

Detective Huf[h]and then came around to the front of the building with the Crown Royal[] bag to find seven small baggies of cocaine, a rock of crack cocaine, a baggie of marijuana, a credit card, and a rolled-up $10.00 bill. The officers then ***Mirandized***[1]

_____

[1] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

all three individuals and searched the two males. They found $424.00 cash on [Appellant's] person in various denominations. They also found $459.00 cash on Weathersby's person, again in various denominations. Simms, when advised that she would be taken to the Armstrong County Jail to be searched, admitted that she had a baggie of cocaine in her pants. All three individuals were apprehended and the contraband, drugs, and cash [were] confiscated.

The contraband recovered from the scene included 1) 20.62 grams of cocaine, packaged in seven small baggies, taken from the green Crown Royal[] bag, 2) 5.99 grams of rock or "crack" cocaine, taken from the Crown Royal[] bag, 3) 1.13 grams of marijuana, taken from the Crown Royal[] bag, 4) 0.21 grams of cocaine, taken from the baggie found under the mattress, 5) 3.95 grams of cocaine, taken from the bag in Simms'[s] pants, and 6) 0.79 grams of Fentanyl, taken from the weighing surface on the digital scale.

Trial Court Opinion, 3/5/2018, at 2-5.

Appellant was arrested and charged with conspiracy in addition to the aforementioned charges. A jury trial was held on April 11, 2017, and Appellant was convicted of all charges except conspiracy. On August 1, 2017, Appellant was sentenced to 30 to 60 months of incarceration on the PWID conviction, and he received no further penalty for the other two convictions. Appellant timely filed a post-sentence motion, which was denied by operation of law on December 21, 2017. Appellant timely filed a notice of appeal, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant first challenges the sufficiency of the evidence to sustain his convictions on all three charges. *See* Appellant's Brief at 9-14. Accordingly, the following principles apply.

The standard of review for a challenge to the sufficiency of the evidence is to determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom is sufficient for the trier of fact to find that each element of the crimes charged is established beyond a reasonable doubt. The Commonwealth may sustain its burden of proving every element beyond a reasonable doubt by means of wholly circumstantial evidence.

The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubt raised as to the accused's guilt is to be resolved by the fact-finder. As an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record. Therefore, we will not disturb the verdict unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

*Commonwealth v. Wanner*, 158 A.3d 714, 717-18 (Pa. Super. 2017) (quoting *Commonwealth v. Vogelsong*, 90 A.3d 717, 719 (Pa. Super. 2014) (citations and quotations omitted)).

To sustain a conviction for the crime of possession of a controlled substance, the Commonwealth must prove that Appellant knowingly or intentionally possessed a controlled substance without being properly registered to do so under the Controlled Substance, Drug, Device and Cosmetic Act (the Act). *See* 35 P.S. § 780–113(a)(16). The crime of PWID requires the Commonwealth to prove an additional element: that Appellant possessed the controlled substance with the intent to manufacture, distribute, or deliver it. *See* 35 P.S. § 780–113(a)(30). The crime of possession or use of drug paraphernalia requires the Commonwealth to prove that Appellant

knowingly or intentionally possessed or used drug paraphernalia. *See* 35 P.S. § 780–113(a)(32).

Because the contraband was not found on Appellant's person, the Commonwealth was required to prove constructive possession.

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. … We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

*Commonwealth v. Brown*, 48 A.3d 426, 430 (Pa. Super. 2012) (quotation marks and citation omitted). The Commonwealth may establish constructive possession of an illegal substance by wholly circumstantial evidence. *Commonwealth v. Johnson*, 26 A.3d 1078 (Pa. 2011). Further, "[c]onstructive possession may be found in one or more actors where the item in issue is in an area of joint control and equal access." *Commonwealth v. Mudrick*, 507 A.2d 1212, 1213 (Pa. 1986).

The trial court offered the following in support of its determination that Appellant constructively possessed the contraband.

> …Detective Pitzer testified that he had several prior experiences with [Appellant] and with drug activity at Staley's Motel. He further testified that, after receiving a report of drug activity in room 8, he observed [Appellant] and Simms come out of the room and converse for several minutes with two individuals in a white car parked outside, at times leaning and reaching into the vehicle. During a traffic stop of the vehicle, the male passenger indicated that two black males, one nicknamed "Yikes," was in the room with drugs. Detective Pitzer knew "Yikes" to be [Appellant's] nickname.

- 6 -

Upon entering the room, which was small, Detective Pitzer observed [Appellant] within arm's reach of a digital scale with drug residue and baggie of cocaine under the mattress, both in plain view.

Trial Court Opinion, 7/20/2017, at 3-4.

Here, Appellant argues that the "Commonwealth failed to present any evidence linking [Appellant] to the motel room, and also failed to present any evidence that [Appellant] exercised conscious dominion over any of the contraband found in the room." Appellant's Brief at 12. Unlike Weathersby, who was seen with the Crown Royal bag, and Simms, who was on the bed with the baggie of cocaine, Appellant argues that he was merely present in the room. *Id*. at 12-13.

Viewing the facts in the light most favorable to the Commonwealth, the totality of the circumstances suggests that all individuals in the room were involved in drug-related activity. First, the scale and a baggie of cocaine were in plain view in a small motel room where Appellant had been seen entering and exiting. N.T., 4/11/2017, at 49. Although others were in the motel room and may have been seen holding the contraband, "[p]ossession of the illegal substance need not be exclusive; two or more can possess the same drug at the same time." *Commonwealth v. Macolino*, 469 A.2d 132, 135 (Pa. 1983).

Detective Pitzer testified that he has "been called [to Staley's Motel] on numerous drug investigations." N.T., 4/11/2017, at 29. In addition, Detective

Pitzer saw both Appellant and Simms engaging in suspicious activity directly from a motel room where it had been reported that drug activity was occurring. Thus, even though police did not see Appellant with the Crown Royal bag, the scale, or the cocaine between the mattresses, a jury could reasonably infer Appellant, as well as the others in the room, constructively possessed them. As we have pointed out,

> although "mere presence" at a crime scene cannot alone sustain a conviction for possession of contraband: "a jury need not ignore presence, proximity and association when presented in conjunction with other evidence of guilt. Indeed, presence at the scene where drugs are being processed and packaged is a material and probative factor which the jury may consider. Drug dealers of any size and [illegal drug] manufacturers probably are reticent about allowing the unknowing to take view of or assist in the operation."

*Commonwealth v. Vargas*, 108 A.3d 858, 868 (Pa. Super. 2014) (quoting *United States v. Robinson*, 978 F.2d 1554, 1557-58 (10th Cir. 1992)). Based on the foregoing, a jury could reasonably infer that Appellant was involved in the drug-related activity occurring in the motel room; thus, we conclude evidence was sufficient to sustain Appellant's convictions.

We now turn to Appellant's second claim, where he contends that the verdict is contrary to the weight of the evidence. *See* Appellant's Brief at 15. We review this claim mindful of the following.

> We have held that [a] motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Our Supreme Court has described the standard applied to a weight-of-the-evidence claim as follows:

The decision to grant or deny a motion for a new trial based upon a claim that the verdict is against the weight of the evidence is within the sound discretion of the trial court. Thus, the function of an appellate court on appeal is to review the trial court's exercise of discretion based upon a review of the record, rather than to consider *de novo* the underlying question of the weight of the evidence. An appellate court may not overturn the trial court's decision unless the trial court palpably abused its discretion in ruling on the weight claim. Further, in reviewing a challenge to the weight of the evidence, a verdict will be overturned only if it is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Cash*, 137 A.3d 1262, 1270 ([Pa.] 2016).  A trial court's determination that a verdict was not against the interest of justice is [o]ne of the least assailable reasons for denying a new trial.  A verdict is against the weight of the evidence where certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.  [W]e do not reach the underlying question of whether the verdict was, in fact, against the weight of the evidence.... Instead, this Court determines whether the trial court abused its discretion in reaching whatever decision it made on the motion[.]

*Commonwealth v. Williams*, 176 A.3d 298, 312 (Pa. Super. 2017) (some citations and quotation marks omitted).

Here, Appellant contends that the jury verdict was

based solely on speculation given that the only facts relied upon by the Commonwealth to connect [Appellant] to any wrongdoing whatsoever were that he was present in a motel room where drugs and contraband that clearly did not belong to him were found, and he had a discussion with the occupants of a vehicle located in front of the motel room where he was arrested.

Appellant's Brief at 15.

In this case, the trial court concluded that the jury verdict did not shock its conscience. Trial Court Opinion, 7/20/2017, at 10.  We discern no abuse of

discretion in that conclusion. Despite Appellant's arguments to the contrary, as discussed *supra*, the Commonwealth established more than Appellant's mere presence in the motel room, including seeing him engaging in suspicious activity and finding cash on his person. Thus, we discern no abuse of the discretion in the trial court's conclusion, and Appellant is not entitled to relief on this claim.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  9/6/2018