J-S19032-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANTHONY BILLY ALEXANDER | : | |
| | : | |
| Appellant | : | No. 1257 MDA 2022 |

Appeal from the Judgment of Sentence Entered August 8, 2022
In the Court of Common Pleas of York County
Criminal Division at No(s):  CP-67-CR-0003658-2021

BEFORE:  BENDER, P.J.E., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                 **FILED SEPTEMBER 25, 2023**

Anthony Billy Alexander ("Alexander") appeals from the judgment of sentence imposed following his conviction for persons not to possess a firearm.[1]  We affirm.

The trial court summarized the relevant factual and procedural history as follows:

> In the early morning of May 21, 2021, Naomy Williams . . . heard a pop sound and began to play the all too familiar guessing game of gunshots or fireworks.  Ms. Williams testified that when she was in the bathroom, she looked out the window to see . . . Alexander . . . discharging a semi-automatic firearm into the air. She stated that she heard five shots go off while on the phone with 911.   [Alexander] was discharging the semi-automatic firearm on South West Street in York, Pennsylvania.
>
> Ms. Williams had identified [Alexander] as one of her neighbors.  Ms. Williams stated that [Alexander] was around six feet tall, with a slim build, and wearing a bright red outfit.  Around

---

[1] **See** 18 Pa.C.S.A. § 6105(a)(1).

the same time[] Ms. Williams was on the phone with 911[,] Officer Timothy McDonnell arrived at the scene. Once there, Officer McDonnell immediately spot[ted] a suspect matching the given description. Officer McDonnell stated that [Alexander] appeared to be incoherent at the time of his encounter. Instead, [Alexander], who was under the influence of PCP and milk, decided to run into his house and discard his gun[;] however, [Alexander] fell up the stairs. Subsequently, Officer McDonnell arrested [Alexander] and swabbed [his] hand for gunshot residue, which later confirmed the presence of gunshot residue on [Alexander's] hands and clothes.

. . . [Alexander] was . . . charged with unlawful possession of a firearm by persons not to possess, reckless endangering another person [("REAP")], and possession of a firearm not to be carried without a license. The Commonwealth disposed of the possession of a firearm without a license at the lower court.

Trial Court Opinion, 11/2/22, at 1-3 (headings, footnotes, unnecessary capitalization, and citations to the record omitted).

In July 2022, the matter proceeded to a jury trial on the persons not to possess charge. The parties stipulated that Alexander was not legally permitted to carry a firearm. During its case in chief, the Commonwealth proceeded on theories that Alexander had, at times, both actual and constructive possession of the firearm. Prior to their deliberations, the trial court instructed the jury on both actual and constructive possession. Ultimately, the jury found Alexander not guilty of REAP, but guilty of persons not to possess. However, the jury specified on the verdict sheet that, with respect to persons not to possess, it found Alexander "guilty-constructive possession." **See** Verdict Slip, 7/12/22. The jury foreperson also announced in open court that the jury found Alexander "guilty under constructive

possession." N.T., 7/12/22, at 2. On August 8, 2022, the trial court sentenced Alexander to eight to sixteen years in prison. Alexander did not file a post-sentence motion. Alexander filed a timely notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925.

Alexander raises the following issue for our review:

> Was the evidence insufficient to sustain . . . Alexander's conviction where the jury explicitly stated orally and in writing that it found him guilty of constructive possession, but all evidence of possession concerned actual as opposed to constructive possession?

Alexander's Brief at 4.

Our standard of review of a sufficiency claim is well-settled:

> [W]e evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. [T]he facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Franklin*, 69 A.3d 719, 722 (Pa. Super. 2013) (citations and quotation marks omitted).

Furthermore, the jury, as trier of fact, is free to believe, all, part, or none of the evidence presented when making credibility determinations. *See Commonwealth v. Beasley*, 138 A.3d 39, 45 (Pa. Super. 2016). In deciding

a sufficiency of the evidence claim, this Court may not reweigh the evidence and substitute our judgment for that of the fact-finder. *See Commonwealth v. Williams*, 153 A.3d 372, 375 (Pa. Super. 2016).

Pursuant to section 6105(a)(1), a person not to possess a firearm is defined as:

> A person who has been convicted of [certain enumerated] offense[s] . . . shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S.A § 6105.

The Commonwealth may establish illegal possession of a firearm by actual or constructive possession. *See Commonwealth v. Parker*, 847 A.2d 745, 750 (Pa. Super. 2005). Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. *See Commonwealth v. Mudrick*, 507 A.2d 1212, 1213 (Pa. 1986). With respect to constructive possession, this Court has explained:

> When contraband is not found on the defendant's person, the Commonwealth must establish "constructive possession," that is, the power to control the contraband and the intent to exercise that control. The fact that another person may also have control and access does not eliminate the defendant's constructive possession. . . . As with any other element of a crime, constructive possession may be proven by circumstantial evidence. The requisite knowledge and intent may be inferred from the totality of the circumstances.

*Commonwealth v. Haskins*, 677 A.2d 328, 330 (Pa. Super. 1996) (internal citations omitted).

- 4 -

Alexander points out that, although the jury found him guilty, it only found him guilty under a theory of constructive possession of the firearm. Alexander acknowledges that the evidence demonstrated that he possessed the firearm; however, he maintains that there was no evidence of constructive possession in the case. Alexander asserts that to "allow [his] conviction to rest on evidence of actual possession would do violence to the jury's 'inviolate' expression of its intent." Alexander's Brief at 21. Alexander contends that, because there was no evidence in the case regarding his constructive possession of the firearm, the evidence is insufficient to support the jury's verdict that he constructively possessed it. Alexander concedes that he was in proximity to the firearm after he dropped it; however, he claims that he ran away from the firearm and was then arrested. According to Alexander, "he had neither the ability nor the intent to control [the firearm] as he was affirmatively relinquishing both." *Id*. at 25.

The trial court considered Alexander's issue and determined that it lacked merit. The court reasoned:

> The Commonwealth presented multiple eyewitnesses that identified [Alexander] as being in control of the gun. The [jury] heard testimony from [Ms.] Williams, a neighbor to [Alexander], stating that on May 21, 2021, she saw [him] discharging a gun into the air. The jury also heard testimony from [Officer] McDonnell, who stated that [Alexander] had the gun in his hand when he arrived on the scene.
>
> Additionally, the jury heard testimony from Officer Daryl Harang, who processed the crime scene and found fresh shell casings and a live round at the location. Lastly, the jury heard testimony from Tarah Helsel, an expert witness, who performed

test samples on [Alexander's] clothes and hands, indicating gunshot residue on both [his] hands and clothing.

Trial Court Opinion, 11/2/22, at 7-8 (unnecessary capitalization omitted).

Based on our review of the evidence, evaluated in the light most favorable to the Commonwealth as the verdict winner, we conclude that the evidence was sufficient to convict Alexander of possession of a firearm by a prohibited person. At trial, Officer McDonnell testified that he and his partner were dispatched to a call regarding shots fired at 133 South West Street. *See* N.T., 7/11-12/22, at 141. When the officers arrived at the scene, Officer McDonnell saw Alexander walking up the street holding a firearm. *Id*. at 145. Officer McDonnell ordered Alexander to drop the firearm; however, Alexander ran to 133 South West Street, where he resides. *Id*. at 146. Alexander entered the open front door into a common area for two separate residences, one upstairs and one downstairs. *Id*. Officer McDonnell explained that Alexander then "dropped [the firearm] right about in there and then ran inside." *Id*. From his vantage point, Officer McDonnell saw Alexander trip on the upward stairwell, and the officer ordered Alexander to come to him. *Id*. at 146-47. Tarah Helsel, a forensic scientist, testified that testing from the swabs taken from Alexander's hands and clothing revealed gunshot residue. *Id*. at 246-49. Additionally, Officer Daryl Harang, a crime scene examiner, testified that fresh shell casings were found at and around Alexander's residence. *Id*. at 175-87.

Giving the prosecution the benefit of all reasonable inferences to be drawn from this testimony, it is clear that Alexander constructively possessed the firearm when he dropped it in the common area of his residence. The totality of this evidence was indicative that Alexander, when he placed the firearm in an area over which he had possession and control, had both the power to control the firearm and the intent to exercise such control of the firearm, even if only momentarily. The jury apparently chose to find that, at the moment in time when Alexander dropped the firearm, he constructively possessed it.[2] That finding is sufficiently supported by the evidence of record. Accordingly, no relief is due.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/25/2023

---

[2] We cannot infer from the jury's determination that the acts comprising actual possession did not occur, as the jury may have been simply exercising leniency toward Alexander. **See Commonwealth v. Carter**, 282 A.2d 375, 376 (Pa. 1971) (explaining that an acquittal cannot be interpreted as a specific finding in relation to some of the evidence because the jury has the sole prerogative to decide that a conviction on some counts will provide sufficient punishment so as to acquit on the remaining counts).