J-S42025-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MIQUAL DESHAWN HODGE | : | |
| | : | |
| Appellant | : | No. 151 MDA 2024 |

Appeal from the Judgment of Sentence Entered October 24, 2023
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s):  CP-21-CR-0001903-2021

BEFORE:  LAZARUS, P.J., BECK, J., and BENDER, P.J.E.

MEMORANDUM BY BECK, J.:                    **FILED: FEBRUARY 26, 2025**

Miqual Deshawn Hodge ("Hodge") appeals nunc pro tunc from the judgment of sentence imposed by the Cumberland County Court of Common Pleas ("trial court") following his conviction of persons not to possess, use, control, sell, or transfer firearms.[1]  Hodge maintains that the Commonwealth's evidence was insufficient to prove that he possessed a firearm and that the trial court's jury instruction regarding possession misstated the law.  Upon review, we affirm.

The Commonwealth established the following facts at Hodge's August 28, 2023 jury trial.  In the summer of 2021, Hodge resided with his then-girlfriend Trish Hiester and Hiester's two adult children in a home leased by

_____

[1]  18 Pa.C.S. § 6105.  Hodge was charged with two additional crimes that were dismissed at trial and unrelated to this appeal.

Hiester. N.T., 8/23/2023, at 13. Around 9:00 p.m. on July 22, 2021, the couple got into an extended argument that culminated in Hiester's demand for Hodge to move out. *Id.* at 13, 15. Hiester, who needed to report to work at midnight, began throwing totes of Hodge's belongings through her front door onto her driveway. *Id.* at 13-14. According to Hiester, while she emptied the house of Hodge's belongings, Hodge ran back and forth between the kitchen and Hiester's bedroom with a black trash bag. *Id.* at 14. As Hiester put it, Hodge had the bag "like gripped up, and he was just waiving it around" while proclaiming that he was a "killer." *Id.* at 14-15.

At approximately 11:00 p.m., Hodge told Hiester that he had called the police. *Id.* at 15. Right before police arrived, Hiester saw Hodge run out of her front door with the trash bag and veer to the right of her house. *Id.* at 15-17, 21. Hodge returned shortly thereafter and entered the house to retrieve an X-Box One video game console upstairs. *Id.* at 15-17.

By the time Newville Borough Police Officer Shawn Gutshall arrived in response to Hodge's call for a domestic disturbance, Hodge was back outside amongst his belongings. *Id.* at 24-26. Hodge told the officer that Hiester wanted him out of her house and that he wanted police to be present so that he was not blamed for anything. *Id.* at 24. Officer Gutshall spoke separately with Hiester, who recounted the facts outlined above. *Id.* at 17-18, 25. Hiester told the officer that she suspected that Hodge had a firearm in the trash bag and that he had stashed it to the right of her house. *Id.* at 21, 24-

- 2 -

Hodge, who was still outside rummaging through his belongings, overheard Hiester's accusation and exclaimed, "That bitch is whack!" *Id.* at 25-26.

Officer Gutshall permitted Hiester to leave for work and began searching the area that Hiester had pointed out. *Id.* at 25-27. Using his flashlight, he searched along the trees for a bit before he discovered a black trash bag "stuffed in" the pine tree closest to Hiester's property. *Id.* at 27-29. Officer Gutshall seized the bag, which was hanging from a branch, and opened it. *Id.* at 29. Inside the trash bag was a distinctive black and red plastic bag with the letters DTLR that matched another plastic bag found in Hodge's belongings on Hiester's front lawn. *Id.* at 30-31. Inside the black and red bag was a black t-shirt later identified as belonging to Hodge. *Id.* The t-shirt was wrapped around an operable but unloaded Taurus Spectrum firearm[2] with the magazine attached. *Id.* at 30-33, 40. Through forensic testing, police identified a fingerprint matching Hodge's left index finger on the magazine. *Id.* at 33. Other fingerprints on the gun were unable to be identified. *Id.* at 34. Police arrested Hodge. *See id.* at 32, 39.

Ultimately, the jury convicted Hodge of persons not to possess a firearm. On October 24, 2023, the trial court sentenced Hodge to five to ten years in

---

[2] The parties entered into multiple stipulations at trial, including an agreement that the Taurus Spectrum was a firearm within the meaning of section 6105 and that Hodge was not permitted to possess a firearm because he had two prior criminal convictions. *Id.* at 34, 39.

prison. Initially, Hodge did not file a notice of appeal. In December 2023, he sought and obtained reinstatement of his appellate rights via the Post Conviction Relief Act[3] and filed a notice of appeal nunc pro tunc. Hodge and the trial court both complied with Pa.R.A.P. 1925.

Hodge raises two issues on appeal, which we re-order for dispositional purposes:

1.  Whether the evidence presented was insufficient to prove the crime of possession of a firearm.

2.  Whether the trial court erred in instructing the jury that simply handling the gun was sufficient to constitute possession of firearm under the law.

Hodge's Brief at 7 (capitalization altered; statutory citation omitted).

## Sufficiency of the Evidence

Hodge stipulated that he had been convicted of an offense that prohibited him from possessing a firearm, but argues that the Commonwealth produced insufficient evidence to prove that he possessed the firearm. Hodge's Brief at 14-18. He asserts that he was not the only one with access to the area and insinuates that Hiester may have planted the weapon and blamed it upon him. *See id.* at 18. Hodge maintains that the Commonwealth's evidence establishes merely that he at one point touched the magazine and that he waved a bag while his girlfriend was arguing with him and tossing his belongings out of the house. *See id.* at 17. Hodge insists that these facts do not establish his intent and power to control a firearm. *Id.*

---

[3] 42 Pa.C.S. §§ 9541–9546.

We review Hodge's challenge to the sufficiency of the evidence pursuant to the following standard:

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is de novo and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the [factfinder] to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the [factfinder].

*Commonwealth v. Scott*, 325 A.3d 844, 849 (Pa. Super. 2024) (citation omitted).

Section 6105(a)(1) provides that a "person who has been convicted of an offense enumerated in subsection (b) … shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth." 18 Pa.C.S. § 6105(a)(1). If contraband is not found on the defendant's person, the Commonwealth must establish that the defendant constructively possessed the contraband—that is, that he had the "power to control the contraband and the intent to exercise that control." *Commonwealth v. Mudrick*, 507 A.2d 1212, 1213 (Pa. 1986). This "legal fiction" is a "pragmatic construct" that

- 5 -

allows the factfinder to infer "from a set of facts that possession of the contraband was more likely than not." *Id.* The Commonwealth may establish constructive possession by the totality of the circumstances. *Id.* "Constructive possession may be found in one or more actors where the item in issue is in an area of joint control and equal access." ***Commonwealth v. Valette***, 613 A.2d 548, 550 (Pa. 1992).

Here, the Commonwealth proved that police found a firearm hidden in a pine tree to the right of Hiester's house. N.T., 8/23/2023, at 27-29. The magazine had no ammunition, but it was attached to the firearm and bore Hodge's fingerprint. *Id.* at 30-33, 40. The firearm was wrapped in Hodge's t-shirt, a distinctive plastic retail bag matching another bag Hodge used to contain his belongings, and a trash bag. *Id.* at 30-31. Further, Hiester testified that Hodge repeatedly waved a garbage bag at her while he proclaimed that he was a killer; after two hours of arguing with Hiester, Hodge called the police; and shortly before the police came he marched out of Hiester's house holding the garbage bag he had been waiving at her and briefly disappeared to the right of her property—the same area where the police later discovered the gun. *Id.* at 21, 24-27.

The jury was entitled to find Hiester's testimony credible, and we will not interfere with this assessment on appeal. ***See Commonwealth v. Antidormi***, 84 A.3d 736, 757 (Pa. Super. 2014). Furthermore, based upon her testimony and the hidden firearm, it was reasonable for the jury to infer

that the firearm was in the garbage bag Hodge had been waiving at Hiester, that he stashed the garbage bag with the firearm in the tree next to Hiester's house so that the police would not find it or connect it to him, and, based upon the totality of the circumstances, that Hodge had the requisite intent and power to control the firearm. *See Mudrick*, 507 A.2d at 1213. Thus, we conclude that the Commonwealth sufficiently established that Hodge, a person prohibited by law from possessing a firearm, constructively possessed a firearm.

## **Jury Instructions**

In a rather meager argument, Hodge maintains that the "trial court erred by instructing the jury that simply handling the gun was sufficient to constitute possession of a firearm" because the law requires the Commonwealth to prove beyond a reasonable doubt that Hodge "had the power and intent to control the gun." Hodge's Brief at 13.

We review this issue pursuant to the "well-settled principles" provided by our Supreme Court:

> A trial court has broad discretion in formulating and delivering instructions to a jury. When reviewing the exercise of that discretion, an appellate court must evaluate the trial court's instruction as a whole to determine if it was fair or prejudicial. A trial court may use such language as it chooses, so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. We will not rigidly inspect a jury charge, finding reversible error for every technical inaccuracy, but rather evaluate whether the charge sufficiently and accurately apprises a lay jury of the law it must consider in rendering its decision. Error cannot be predicated on isolated excerpts of the charge, but it is the general effect of the charge that controls.

***Commonwealth v. Drummond***, 285 A.3d 625, 634-35 (Pa. 2022) (quotation marks, footnotes, and citations omitted).

Relevant to Hodge's argument, the trial court explained that the jury needed to decide whether the Commonwealth proved beyond a reasonable doubt that Hodge "knowingly possessed a firearm," and defined possession as the following:

> What do I mean by possess? **For a person to possess a firearm, he must have the intent to control and the power to control the firearm.** A person doesn't possess something merely because he is aware of the presence and nature of the thing or because he is physically close to it. Although proof of such facts may be evidence tending to show possession, **such facts do not of themselves establish the necessary intent and power to control**.
>
> Possession means a couple of different things. First, possession means what it means in the ordinary usage. Someone is **knowingly holding, carrying, or otherwise directly controlling** the possession of an item. I am possessing this pencil because I'm holding it and I know it's a pencil. That's the issue in this case. Has the Commonwealth proven beyond a reasonable doubt that [Hodge] held a gun knowing it was a gun? If you find beyond a reasonable doubt they have proven that, then that meets that particular element of the offense.
>
> The other type of possession is what we call constructive possession. You've got the power and intent to control something. My golf clubs are in the trunk of my car, so I'm not holding them, but I possess them, because I've got the power and intent to control them. I intend to control them after work today if the weather holds up. So, those are two types of possession. If either one or both have been proven, the Commonwealth has met that element of the offense.

N.T., 8/28/2023, at 59 (emphasis added).

At sidebar, the following exchange between defense counsel and the trial court occurred.

> [Defense counsel]: I would like to take exception with your charge on possession. I think, as you presented it, possession consists of −− you were handling your pencil.
>
> [Trial court]: That's the law.
>
> [Defense counsel]: Isn't that a little bit like saying that when you go to the country club with your golf clubs in the trunk and the club boy takes them out and set them out −−
>
> [Trial court]: That's right.
>
> [Defense counsel]: −− that he possesses them?
>
> [Trial court]: That's the law. He does at that point in time. If he holds that firearm, and he was prohibited by law from possessing a firearm, he's guilty of the charge. Your exception is noted.

*Id.* at 62.

During deliberations, the jury asked the trial court whether touching the magazine was the same as touching the gun. The trial court responded,

> It depends. Let me give you the definitions again. The term firearm includes any weapon that is designed or may readily be converted to expel any projectile by the action of an explosive. For a person to possess a firearm, he must have the intent to control and the power to control the firearm.
>
> So, if he's holding the firearm, that's possession, as long as he knows it's a firearm. So, he knowingly holds it. That's possession of it. If the magazine was on the firearm part of the firearm, and he held it and knew it was a firearm, that's possession **because he's got the power to control it and the intent to control it because he's holding it.**
>
> There's a difference between holding and touching. Touching could be possession, but it's not necessarily possession. **It boils down to the intent to control and the power to control.**

- 9 -

*Id.* at 65 (emphasis added).

A juror sought clarification about "just holding the magazine" when it was separated from the gun. *Id.* The trial court interjected and explained that the magazine itself was not a weapon within the statutory definition. *Id.* Nevertheless, the trial court continued,

> [T]ouching the magazine is the same as touching the gun if the magazine is attached to the gun. That's on the one type of possession.
>
> The other type of possession is you don't have to touch it, but **you've got to have the power and intent to control it**. This is what's called constructive possession. So, if – as I said, my golf clubs are in the car. I'm not actually touching them or holding them, but I'm still possessing them, because I have the power to control them.

*Id.* at 64-65 (emphasis added). The prosecutor and Hodge's counsel indicated that they did not have an objection to the trial court's answer to the jury's initial or subsequent questions. *Id.* at 65.

After reviewing the trial court's jury instructions in their entirety, we disagree with Hodge's contentions that the trial court equated "simply handling" the firearm with possession or that the trial court misrepresented the law to the jury. The trial court explained that a person can possess an item that he is holding or one that he is not holding, and repeatedly emphasized that under either theory of possession, intent to control and power to control the firearm was necessary. *See Mudrick*, 507 A.2d at 1213; *see also* Pa. SSJI (Crim) § 15.6105 ("For a person to 'possess' a firearm, he

or she must have the intent to control and the power to control the firearm."). We discern no prejudice or inaccurate statement of the law. When considering the instructions as a whole, we conclude that the trial court clearly, adequately, and accurately explained the law of possession to the jury and did not abuse its discretion in using language of its own choice. **See Drummond**, 285 A.3d at 634.

### Conclusion

We conclude that the Commonwealth sufficiently proved that Hodge constructively possessed the firearm. We further conclude that the trial court fairly and accurately instructed the jury regarding possession. As such, we affirm Hodge's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>2/26/2025</u>