**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CLIFFORD J. PARKER, JR. | : | |
| | : | |
| Appellant | : | No. 361 WDA 2018 |

Appeal from the Judgment of Sentence June 21, 2017
In the Court of Common Pleas of Beaver County Criminal Division at
No(s):  CP-04-CR-0002231-2016

BEFORE:  OLSON, J., MURRAY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY MURRAY, J.:                **FILED SEPTEMBER 24, 2018**

Clifford J. Parker, Jr. (Appellant) appeals from the judgment of sentence imposed after the trial court convicted him of one count of receiving stolen property, two counts of illegally possessing a firearm, and three counts of possessing a controlled substance with the intent to deliver.[1]  We affirm.

A two-day bench trial commenced on May 17, 2017.  The trial court entered its six guilty verdicts on May 18, 2017.  The trial court detailed the facts presented at trial as follows:

> Richard Woznicki, a Narcotics Investigating Agent for the Pennsylvania Office of Attorney General Bureau of Narcotics and Drug Control, was working on July 7, 2016 in his capacity as a Narcotics Agent and was executing and conducting a search warrant. N.T., 5/17/17, at 14-17.  Agent Woznicki testified that he was searching an apartment for illegal narcotics based on a continuing investigation into [Appellant], Clifford Parker.  *Id.* at 17-18.  In this instance, the apartment being searched was within

---

[1] 18 Pa.C.S.A. §§ 3925(a), 6105(a)(1), and 35 P.S. § 780-113(a)(30).

an apartment complex and the agent was part of the entry team who witnessed the knocking and announcing which took place before entry. *Id.* at 20-21. After the entry team knocked and announced its presence, the task force officers used a key, previously obtained, to gain entry into the residence. *Id.* at 21. After entering the residence, the officers verbally announced that they were police and the occupants were ordered to get down on the ground; Agent Woznicki encountered [Appellant] and another female. *Id.* at 22. In the apartment there is a kitchen area, a living room area, two bedrooms and a bathroom. *Id.* at 23. Specifically, when Agent Woznicki made entry into the apartment, he observed [Appellant] coming from a bedroom area through the hallway which was in front of the officers; [Appellant] was "coming from the area of the back bedroom, then he was turning going back towards that area." *Id.* at 23-25. Once [Appellant] and the female were secured, they were moved to the living room area and the officers proceeded to search the apartment. *Id.* at 26. Following a search of the apartment which included the kitchen area, the bedrooms, the bathroom and the living room area, Agent Woznicki found several items of significance in one of the bedrooms. *Id.* at 26-27. Specifically, the agent discovered narcotics consisting of heroin, powder and crack cocaine, ecstasy pills, two firearms, a digital scale, drug paraphernalia, some U.S. currency, firearm ammunition, grinders and food processors. *Id.* at 27-28.

In the bedroom containing the contraband, Agent Woznicki also found male clothing and within a dresser against one of the bedroom walls, the agent found a knotted plastic bag with suspected cocaine, a box of "baggies", a dish with straws on it, a gallon size bag, and a loaded .380 handgun. *Id.* at 29-31. The agent attributed the baggies to the repackaging of the narcotics for resale and the large bent straws for either personal use or filling baggies with narcotics. *Id.* at 31-32. Agent Woznicki also discovered black and gold rubber bands which, in his experience, are used for heroin packaging to bundle glassine packets of heroin. *Id.* at 32-33. Also on the dresser in the bedroom were three prescription bottles with [Appellant's] name on them. *Id.* at 33-34. The agent located four bottles of melatonin vitamins which are typically used as a sleep aid but, according to Agent Woznicki, can be used as a cutting agent for narcotics. *Id.* at 34.

Amongst other items located in the bedroom, Agent Woznicki located a Pennsylvania driver's license with the name

"Clifford J. Parker, Jr." next to a digital scale which was also recovered; the address on the driver's license was 107 Orchard Street, Aliquippa, Pennsylvania 15001. *Id.* at 38. Com. Exhibit 12. The license had been issued on September 17, 2015 which was a little less than a year prior to the date of the search. *Id.* at 38-39. The agent further seized a loaded .380 semi-automatic handgun which was loaded at the time of discovery with an extra round in the chamber and was found with a concealed holster. *Id.* at 40. This handgun was a Bersa Thunder .380 semiautomatic silver and black pistol, serial number A17393. *Id.* at 102-103. The officers ran the serial number through the NCIC database and they discovered the firearm was reported stolen in Findlay Township. *Id.* at 103.

Within the bedroom area and on top of the dresser, Agent Woznicki located a set of numerous keys including a key for a vehicle that [Appellant] was utilizing and which the agent described as a black Mitsubishi Lancer. *Id.* at 42-43. This motor vehicle was parked in the lot of the apartment building and it was searched after [Appellant] gave the officers written consent to do so. *Id.* at 44. Agent Woznicki also found a dictionary which had a concealed compartment and where the agent found the bulk of all of the drugs; this dictionary was located in the bedroom area of the apartment and the same bedroom that the agent had observed [Appellant] heading toward at the time he entered the residence. *Id.* at 44-45.

The dictionary was sitting on top of a cardboard box that contained male clothing. *Id.* Agent Woznicki also seized boxes containing unused glassine packets, a grinder or food processor which had white powder on it and U.S. currency in the amount of approximately $800. *Id.* at 46-48. The agent further found a separate handgun holster, three mason jars with quantities of suspected marijuana, another grinding tool and a box of Winchester handgun ammunition; the ammunition was consistent with what was contained in the handgun seized. *Id.* at 48-49. Also within the closet of the same bedroom, Agent Woznicki located an SKS Yugo assault rifle with a fixed bayonet, however the rifle was not loaded and there was no magazine belonging to the rifle. *Id.* at 49-50.

Several items seized were submitted to the Greensburg State Police Crime Lab and the subsequent report[FN]2 indicated that the substances were identified as methamphetamine, heroin,

cocaine, and carisoprodol.  *Id.* at 56-59.  Agent Woznicki and Agent Wagaman tested the .380 semiautomatic handgun at the range for functionality[FN]3 with rounds provided by law enforcement.  *Id.* at 67-69.  Agent Woznicki and Agent Wagaman also test fired the rifle with the fixed bayonet by manually loading each round into the chamber because it lacked a magazine; however, the rifle fired the rounds without issue.  *Id.* 70-72.

> [FN] 2 The parties stipulated to the admissibility of the report and the conclusions reached therein including the weights and the types of substances.  N.T., 5/17/17, at 56-57.

> [FN] 3 The parties stipulated to the functionality of the firearm as well as the fact that Agent Woznicki witnessed the functionality test.  N.T., 5/17/17, at 67-68.

During the search, [Appellant] was read his Miranda rights and signed an Office of Attorney General Miranda Rights Form on July 7, 2016 at 911 Second Street, Apartment 12, in Baden.  *Id.* at 73-75.  After signing this form, [Appellant] made statements to Task Force Officer James Mann at which time he stated "[t]hat the drugs [in the bedroom] weren't his. He was holding them for his brother."  *Id.* at 75-76.  At the time of trial, Agent Woznicki identified [Appellant], Clifford Parker, as the individual who was present during the course of his execution of the search warrant.  *Id.* at 73-74.  During trial, the Commonwealth introduced a stipulation regarding [Appellant's] prior record with respect to a drug conviction, and further, [Appellant] stipulated that he is a person not to possess a firearm under the law as a result of his conviction.  *Id.* at 76-77.  Testimony on cross-examination at trial provided that the agent did not make any investigation as to who paid the bills or the rent to the leased premises but Agent Woznicki did state that the premises was not leased to [Appellant]. *Id.* at 86.

Michelle Nelson is a resident of Findlay Township and a gun owner.  *Id.* at 123.  Approximately a year prior to trial, Ms. Nelson had a .380 Bersa Thunder firearm stolen from her home and she reported the incident to the Findlay Township police.  *Id.* Ms. Nelson stated that she had purchased the firearm from Ace Sporting Goods and it was a "nickel plated black rip automatic with a seven[] shot clip."  *Id.* at 124.  At the time of trial, Ms. Nelson

viewed the firearm which was seized by police at the time of the search warrant and identified it as the .380 Bersa Thunder which was stolen from her residence. *Id.* at 125. Ms. Nelson was not familiar with [Appellant] and had not given anyone permission to remove the firearm from her residence. *Id.* at 125-126.

At trial [Appellant] testified on his own behalf. [Appellant] testified that he had been to the apartment in Baden on approximately three or four occasions and has seen anywhere from five to ten people at that residence. N.T., 5/18/17, at 5. [Appellant] stated that he arrived at the residence on the date the search warrant was executed between 11:30 PM and midnight and was driving Danita Hutchin's ([Appellant's] girlfriend's) car. *Id.* at 5-6, 14. According to [Appellant], his car was at the scene because Ms. Hutchins was using it. *Id.* [Appellant] was at the residence to engage in sexual encounters and take drugs and he testified that there were approximately six people at the party that night. *Id.* at 6. The owner of the residence goes by the name "Bria" and according to [Appellant], she hosts parties approximately twice a week. *Id.* When the search warrant was being executed, [Appellant] was in the hallway coming out of the first bedroom. *Id.*

According to [Appellant], the reason why he tried to turn and enter a back bedroom, as Agent Woznicki had testified, was because he heard the door open and thought people were still in the apartment so "[he] was trying to tell everyone to get up, the police are []here." *Id.* After looking into the bedroom and not seeing anyone in the room, [Appellant] testified that he laid down on the ground. *Id.* at 8. [Appellant] testified that he lives at 107 Orchard Street, Aliquippa and this occasion was the first time he had stayed overnight at the Baden apartment. *Id.* at 8. According to [Appellant], the medications seized by police with his name on the label belong to him because he has high blood pressure and must take the medications twice per day. *Id.* at 8-9. [Appellant] further provided that he carries those medications with him at all times, and he also carries his wallet and car keys at all times. *Id.* at 9.

Trial Court Opinion, 5/4/18, at 2-7.

On June 21, 2017, the trial court sentenced Appellant to an aggregate 5 to 10 years of incarceration. Appellant did not file a timely appeal. However,

he filed a timely petition for post-conviction relief and the trial court reinstated his direct appeal rights *nunc pro tunc*. Thereafter, Appellant and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

On appeal, Appellant assails the sufficiency of the evidence, stating:

The underlying convictions at each of the 6 counts were not supported by sufficient evidence, where the Commonwealth failed to establish constructive possession as an initial matter at each count, where [Appellant] was merely a guest at the apartment and the Commonwealth failed to establish he had dominion and control over anything found in a back bedroom, including the stolen gun, any other weapons, or the drugs located in that room.

Appellant's Brief at 6.

Appellant argues that the evidence was insufficient to support his convictions because the Commonwealth "did not offer evidence of indicia that would establish [Appellant] permanently lived at the apartment, nor did they know who rented the apartment. They did know, however, that [Appellant] was not the tenant." *Id.* Appellant states that he was in the "wrong place at the wrong time," and his "mere presence" cannot "establish constructive possession of the contraband." *Id.*

Conversely, the Commonwealth argues that "evidence seized from the bedroom [of the apartment], including [Appellant's] wallet, identification, and multiple prescription pill bottles, suggested [Appellant] was a resident of the apartment, and this was his sole bedroom." Commonwealth Brief at 11. The Commonwealth emphasizes that "all guns, drugs, packaging material, paraphernalia, and [Appellant's] personal belongings were found within the same bedroom. All of the clothing in the bedroom . . . was male clothing [and

Appellant] admitted to possessing all of the illegal items, including guns and controlled substances, when he stated to agents that he was holding the items for his brother." ***Id.*** at 11-12. Upon review, we agree with the Commonwealth. Our determination is informed by our standard of review when examining sufficiency claims:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

***Commonwealth v. Franklin***, 69 A.3d 719, 722-23 (Pa. Super. 2013) (internal quotations and citations omitted).

The trier of fact – in this case the trial judge – is free to believe, all, part, or none of the evidence presented when making credibility determinations. ***Commonwealth v. Beasley***, 138 A.3d 39, 45 (Pa. Super.

2016). In deciding a sufficiency of the evidence claim, this Court may not reweigh the evidence or substitute our judgment for that of the fact-finder. ***Commonwealth v. Williams***, 153 A.3d 372, 375 (Pa. Super. 2016).

Instantly, we are not persuaded by Appellant's sufficiency argument in which he generally asserts – without reference to or discussion of the three statutes under which he was convicted – that the evidence was insufficient to demonstrate his constructive possession of the contraband. ***See*** Appellant's Brief at 18-22. We note that Appellant was convicted of six crimes under the following three statutes:

> **§ 3925. Receiving stolen property**
>
> **(a)Offense defined.**--A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner.

18 Pa.C.S.A. § 3925.

> **§ 6105. Persons not to possess, use, manufacture, control, sell or transfer firearms**
>
> **(a)Offense defined.--**
> (1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S.A. § 6105.

> **§ 780-113. Prohibited acts; penalties**
>
> (a)The following acts and the causing thereof within the Commonwealth are hereby prohibited:

. . .

(30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780-113.

The record does not support Appellant's argument that "the constructive possession case against [Appellant] was established through conjecture." Appellant's Brief at 22. We have held:

> When contraband is not found on the defendant's person, the Commonwealth must establish "constructive possession," that is, the power to control the contraband and the intent to exercise that control. *Commonwealth v. Valette*, 531 Pa. 384, 613 A.2d 548 (1992). The fact that another person may also have control and access does not eliminate the defendant's constructive possession.... As with any other element of a crime, constructive possession may be proven by circumstantial evidence. *Commonwealth v. Macolino*, 503 Pa. 201, 469 A.2d 132 (1983). The requisite knowledge and intent may be inferred from the totality of the circumstances. *Commonwealth v. Thompson*, 286 Pa. Super. 31, 428 A.2d 223 (1981).
>
> *Commonwealth v. Haskins*, 450 Pa. Super. 540, 677 A.2d 328, 330 (1996), *appeal denied*, 547 Pa. 751, 692 A.2d 563 (Pa. 1997). Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. *Commonwealth v. Mudrick*, 510 Pa. 305, 507 A.2d 1212, 1213 (1986).

*Commonwealth v. McClellan*, 178 A.3d 874, 878 (Pa. Super. 2018)

(citations omitted).

- 9 -

Our review supports the trial court's determination that there was sufficient indicia that Appellant constructively possessed the firearms and drug evidence recovered from the apartment bedroom. The Commonwealth presented the testimony of Narcotics Agent Richard Woznicki from the Pennsylvania Attorney General's Office, Narcotics Task Force Member James Mann, and Michelle Nelson, who was the owner of the stolen "Bersa Thunder" firearm; Appellant testified as the sole witness for the defense. The detailed recitation of facts by the trial court accurately reflects the witnesses' testimony and evidence produced at trial. *See* Trial Court Opinion, 5/4/18, at 2-7. The trial court reasoned:

> The narcotics and firearms were in close proximity to [Appellant], who was heading in the direction of the bedroom containing these items. In addition, police recovered numerous items indicative of drug trafficking, including a digital scale, glassine packets, rubber bands, a dish with straws on it, and a food processor with white powder residue on it. The "totality of the evidence" demonstrates [Appellant's] constructive possession of the drugs and the firearms. *See* [*Commonwealth v.*] *Hopkins*, [67 A.3d 817, 820-21 (Pa. Super. 2013)]. Further, the Commonwealth was under no obligation to prove that only [Appellant] constructively possessed the drugs found in the house. As noted above, two people can constructively possess the same contraband. *See id.*
>
> Additionally, [Appellant] stipulated that he is a person not to possess firearms and the Commonwealth introduced a certified record of [Appellant's] prior conviction for drug offenses. N.T., 5/17/17, at 76-77. Michelle Nelson testified that she purchased a .380 Bersa Thunder firearm which was subsequently stolen from her home. N.T., 5/17/17, at 123-124. At trial, Ms. Nelson identified Commonwealth's Exhibit 38, which was the firearm seized at the time of the search warrant, as the .380 handgun which was stolen from her residence. *Id.* at 125.

Trial Court Opinion, 5/4/18, at 10.

Consistent with the foregoing, we find no basis to disturb the trial court's conclusion that Appellant constructively possessed the firearms and drugs. In sum, the record does not support Appellant's contention that the evidence was insufficient to support a finding that he constructively possessed the contraband that resulted in his criminal convictions.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/24/2018

- 11 -