J-S24030-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAYMIE LYNN BROOKS | : | |
| | : | |
| Appellant | : | No. 1538 WDA 2024 |

Appeal from the Judgment of Sentence Entered November 13, 2024
In the Court of Common Pleas of Fayette County Criminal Division at
No(s): CP-26-CR-0001467-2021

BEFORE: NICHOLS, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED: NOVEMBER 13, 2025**

Jaymie Lynn Brooks appeals from the judgment of sentence imposed following her convictions for possession with intent to deliver ("PWID"), intentionally possessing a controlled substance by a person not registered, and use/possession of drug paraphernalia.[1] She challenges the sufficiency of the evidence to support two of her convictions and an evidentiary ruling. We affirm.

We glean the following from the record. At Brooks's jury trial, Trooper Charles Smolleck of the Pennsylvania State Police testified that on October 15, 2019, the police went to a residence at 7 Pittsburgh Street[2] in Fairchance and

---

[1] 35 P.S. §§ 780-113(a)(30), (a)(16), and (a)(32), respectively.

[2] The record refers to this address as both 7 Pittsburgh Street and 7½ Pittsburgh Street. For purposes of this memorandum, we will refer to the residence at issue as 7 Pittsburgh Street.

observed Brooks and Robert Johnston in the living room through a window on the front door. N.T. Trial, 11/4/24-11/5/24, at 47, 49. The police went to the residence because they had received information that Brooks and Johnson had outstanding warrants. The police knocked and announced on the door. *Id.* at 47. Johnston opened the door and let the police in. *Id.* Brooks and Johnston were the only people in the residence. *Id.* at 72-73. In describing the house, Trooper Smolleck testified that "[w]hen you walk in, it's a living room and a dining room that's just one big combined room and then the kitchen and then there was a bathroom in the rear and a bedroom on the right." *Id.* at 49. After Trooper Smolleck walked inside the residence, he observed numerous bundles of cash, numerous pills in different colors, prescription bottles without labels, and a prescription for suboxone with Brooks's name on it, all in plain view. *Id.* at 47, 79. The police secured the residence and obtained a search warrant. *Id.* at 47-48.

Trooper Smolleck testified that when they executed the warrant, police found numerous items that corroborated the use of narcotics in a large quantity: latex gloves, small packaging baggies, and a scale; a large quantity of crack cocaine in red solo cups taped under the sink; numerous pills in the dining room; six cellphones; and $6,094 in cash in the recliner in the living room. *Id.* at 48-49. Trooper Smolleck noted that the scale was found inside a kitchen drawer "in arm's length of where the crack cocaine was located." *Id.* at 59. He stated that the baggies and latex gloves were also found in the kitchen "in close proximity of the crack cocaine." *Id.* at 62. Trooper Smolleck

did not know who the cellphones belonged to and stated that they were not checked for text messages or calls. *Id.* at 77. The police also recovered $617 from Brooks's purse, which was comprised of 30 $20 bills, one $10 bill, three $2 bills, and one $1 bill. *Id.* at 67-68.

Trooper Smolleck further testified that the police found in the residence a gas bill for 7 Pittsburgh Street in Brooks's name. *Id.* at 66-67, 80-81, 83-84. The police also found mail with insurance company information addressed to Johnston at 7 Pittsburgh Street. *Id.* at 66-67, 80. The police further observed that there was both male and female clothing at the residence. *Id.* at 84. Trooper Smolleck stated that he did not know who owned the residence or how long Brooks had been living there. *Id.* at 72.

Trooper Smolleck further testified that he checked Department of Labor and Industry records to determine Brooks's employment. *Id.* at 69. He indicated that there was no record showing Brooks had any employment in 2019. *Id.* Brooks was also not collecting welfare. *Id.* at 71.

A forensic scientist in the serology section at the Lima Regional Crime Lab, Morgan Wiernusz, testified that she tested the evidence that the police seized from the residence at 7 Pittsburgh Street. Wiernusz testified that she analyzed a Ziplock bag containing two knotted plastic bags containing an off-white substance. *Id.* at 91. She determined that the substance was cocaine, which is a Schedule II drug, and had a net weight of 187.73 grams. *Id.* She stated that she also tested another substance and determined it was cocaine with a net weight of .96 grams, plus or minus .01 grams. *Id.* at 91-92.

Wiernusz also reviewed baggies containing different colored tablets. *Id.* at 93-94. She determined the tablets were amphetamines and oxycodone, which are a Schedule II drugs. *Id.* at 94-96. Wiernusz further determined that one baggie contained buprenorphine, which is a Schedule III drug. *Id.* at 96. She did not know if there were prescriptions for the controlled substances. *Id.* at 101.

Another trooper, Trooper Anthony Svetz, testified that he was called to the residence on October 15, 2019. *Id.* at 106. He stated that he conducted a search of Brooks's person and purse. *Id.* at 107. Trooper Svetz testified that he found $617 in cash in Brooks's purse. *Id.*

A third state trooper, Trooper Matthew Rucinski, testified that he participated in executing the search warrant of the residence. *Id.* at 112-13. He stated that the K-9 unit indicated that drugs were under the sink. *Id.* at 113. Trooper Rucinski searched under the sink and found "what appeared to be a bundle of crack cocaine" in red solo cups that were taped underneath the sink. *Id.* at 113-14. Trooper Rucinski then searched the recliner in the living room and found an envelope with a "thick stack of cash" inside in the back of the recliner. *Id.* at 114-15. Trooper Rucinski also observed pill bottles with "mixed pills" and drug paraphernalia inside the residence. *Id.* at 115.

Detective Jamie Holland of the Uniontown City Police Department testified for the Commonwealth as an expert in the field of drug trafficking. *Id.* at 123. The trial court accurately summarized Detective Holland's testimony as follows:

- 4 -

Detective Holland stated the typical signs of a case of possession with the intent to deliver are large amounts of money, large amounts of controlled substances, drug paraphernalia, packaging materials, scales, and other things of that nature. [N.T.] at 124. Detective Rolland testified the amount of crack cocaine in the first sample collected was absolutely indicative of possession with the intent to deliver because the amount was extremely large and because the weight went into abnormal decimals which was significant as those possessing crack cocaine for personal use typically buy in whole grams. *Id.* at 124-27. Detective Holland stated the scale and the $6,094.00 in cash were indicative of possession with the intent to deliver, especially given the strange and hidden location of most of the money. *Id.* at 128. Detective Holland also testified that both the baggies and the latex gloves were indicative of possession with the intent to deliver. *Id.* at 125, 127-28.

Detective Holland's expert opinion in this case was [Brooks] possessed the controlled substances with the intent to deliver; he added this is absolutely an amount intended for distribution rather than an amount for personal use. *Id.* at 128-29. Detective Holland based his opinion on the amount of money, the amount of controlled substances, the differentiating controlled substances that were listed and that were received, where the money was located, the scale, and the baggies; he stated all the boxes were being checked here for what is looked for regarding distribution of controlled substances. *Id.* at 129. Detective Holland testified his expert opinion was rendered to a reasonable degree of professional certainty. [*Id.*] Detective Holland stated he was not involved in the investigation but rather reviewed the evidence provided to him to form his opinion. *Id.* at 130-32. However, Detective Holland firmly stated he has never seen nor heard of anyone who used seven ounces of crack cocaine for personal use in his entire lifetime, and he added that as a result of his employment he deals with individuals who are coping with addiction on a daily basis. *Id.* at 130-31.

Trial Court Opinion, filed 2/11/25, at 6-7.

After the Commonwealth rested, the defense called its only witness, Brooks. Brooks testified that in October 2019, she was living at 7 Pittsburgh Street in Fairchance with her boyfriend, Johnston. N.T. at 147-48, 152-53. She said that they had lived there for approximately two years and had rented the house from a person named "Hop." *Id.* at 148, 153-54. Brooks testified that in October 2019, she was working as a home health aide and made $777 per week. *Id.* at 147-49. She stated that she only took one week off from work in 2019 after she gave birth to her daughter in June. *Id.* at 149-50. Brooks testified that she had a drug addiction problem in 2019. *Id.* at 150. She said that she is currently taking Subutex to "help clean [her]self up." *Id.*

Brooks denied selling any drugs out of the Fairchance residence or possessing any cocaine. *Id.* at 150-51. She testified that she was aware that Johnston was "indulging in illegal activity" in the residence and selling narcotics, but she did not know the amount of drugs or where the drugs were located. *Id.* at 151, 156. Brooks stated that she did not report Johnston because he is her daughter's father. *Id.* at 156. She testified that after they were arrested, Johnston fled to Nevada. *Id.* at 151-52. Brooks stated that some of the pills found by the police were for her daughter who had a prescription for Adderall. *Id.* at 156-57. Brooks acknowledged that her daughter did not take oxycodone. *Id.* at 158.

At the conclusion of the trial, the jury found Brooks guilty of the above offenses. *Id.* at 181. The court sentenced Brooks to four to eight years'

incarceration. Brooks did not file a post-sentence motion. This appeal followed.

Brooks raises the following issues:

1. Whether the evidence presented was sufficient to support the guilty verdicts of drug possession and intent?

2. Whether admitting a large sum of cash, totaling $6,094.00[,] into evidence was an abuse of discretion or an error after cross[-]examination testimony revealed the evidence envelope had been opened?

Brooks's Br. at 7.

Brooks's first issue challenges the sufficiency of the evidence. Brooks argues that since no drugs were found on her person, the Commonwealth could not prove actual possession but was required to prove culpability through constructive possession. *Id.* at 9. She asserts that the Commonwealth failed to prove that she constructively possessed the drugs because it did not present evidence that she had the ability to control or exercise dominion over the drugs. *Id.* In Brooks's view, there was no evidence presented that she was a drug dealer, had the intent or the ability to exercise control over the of cocaine, or owned the cell phones that were confiscated from the residence. *Id.* at 10. Brooks further points out that only a small amount of cash ($617) was found in her purse, there was no evidence that the residence was in an area known for drug activity, and no drug paraphernalia was found on Brooks's person. *Id.* Brooks emphasizes that another person, Johnston, lived in the house and Johnston absconded from

Pennsylvania and went to another state. ***Id.*** She further argues that since the Commonwealth's expert, Detective Holland, was not involved in the investigation and only reviewed the evidence, his "testimony as to the packaging, amount, paraphernalia, and drugs, did not bolster the Commonwealth's case that [Brooks] herself possessed any drugs and/or possessed the drugs with the specific intent to deliver." ***Id.*** at 12.

The sufficiency of the evidence is a question of law. Therefore, "[o]ur standard of review is *de novo*, and our scope of review is plenary." ***Commonwealth v. Mikitiuk***, 213 A.3d 290, 300 (Pa.Super. 2019). When reviewing a challenge to the sufficiency of the evidence, we "must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt." ***Commonwealth v. Feliciano***, 67 A.3d 19, 23 (Pa.Super. 2013) (*en banc*) (citation omitted). "Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail." ***Id.*** (citation omitted). This standard applies equally where the Commonwealth's evidence is circumstantial. ***Commonwealth v. Patterson***, 180 A.3d 1217, 1229 (Pa.Super. 2018). This Court "may not substitute our judgment for that of the factfinder." ***Commonwealth v. Griffith***, 305 A.3d 573, 576 (Pa.Super. 2023). The factfinder, "while passing on the credibility of the witnesses and

the weight of the evidence[,] is free to believe all, part, or none of the evidence." **Commonwealth v. Miller**, 172 A.3d 632, 640 (Pa.Super. 2017).

Here, the relevant offenses under 35 P.S. § 780–113(a)(30) provide:

(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:

(16) Knowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act. . . .

(30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780–113(a)(16), (30).

To sustain a conviction for PWID, the Commonwealth must prove both that (1) the defendant possessed a controlled substance and (2) the defendant had the intent to deliver the controlled substance. **Commonwealth v. Taylor**, 33 A.3d 1283, 1288 (Pa.Super. 2011).

Possession can be established "by proving actual possession, constructive possession, or joint constructive possession." **Commonwealth v. Parrish**, 191 A.3d 31, 36 (Pa.Super. 2018) (citation omitted). "Where a defendant is not in actual possession of the prohibited items, the Commonwealth must establish that the defendant had constructive possession

to support the conviction." *Id.* Constructive possession exists where the defendant has "the power to control the contraband and the intent to exercise that control." *Commonwealth v. Hopkins*, 67 A.3d 817, 820 (Pa.Super. 2013) (citation omitted). "Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not." *Commonwealth v. McClellan*, 178 A.3d 874, 878 (Pa.Super. 2018). The Commonwealth may prove constructive possession by the totality of the circumstances. *Hopkins*, 67 A.3d at 820. "[A] defendant's mere presence at a place where contraband is found or secreted is insufficient, standing alone, to prove that he exercised dominion and control over those items." *Parrish*, 191 A.3d at 37. "Rather, knowledge of the existence and location of the contraband is a necessary prerequisite to proving the defendant's intent to control, and, thus, his constructive possession." *Id.*

Further, "[t]wo actors may have joint control and equal access and thus both may constructively possess the contraband." *Commonwealth v. Jones*, 874 A.2d 108, 121 (Pa.Super. 2005) (citation omitted)." Additionally, the power to control the contraband "may be found in one or more actors where the item in issue is in an area of joint control and equal access." *Commonwealth v. Valette*, 613 A.2d 548, 550 (Pa. 1992). This Court recently explained:

> In *Commonwealth v. Macolino*, 503 Pa. 201, 469 A.2d 132 (1983), our Supreme Court addressed the issue of joint constructive possession and held that "possession of an illegal substance need not be exclusive; two or more can possess the same drug at the same time." *Id.* at 136. In

that case, the Supreme Court concluded that there was sufficient evidence to show that contraband and items of drug paraphernalia discovered in the shared bedroom of a married couple were in the constructive possession of both spouses. The Supreme Court held that "constructive possession can be found in one defendant when both the husband and wife have equal access to an area where the illegal substance or contraband is found." *Id.* at 135.

The Supreme Court thereafter clarified that "even absent a marital relationship[,] constructive possession may be found in either or both actors if contraband is found in an area of joint control and equal access." *Commonwealth v. Mudrick*, 510 Pa. 305, 507 A.2d 1212, 1214 (1986). In *Mudrick*, the Supreme Court found that the jury could find that cocaine found in a bedroom shared by two occupants was in an area of joint control and equal access to both individuals. *Id. See also Commonwealth v. Aviles*, 419 Pa.Super. 345, 615 A.2d 398 (1992) (*en banc*) (concluding there was sufficient evidence to show that the appellant constructively possessed cocaine, drug paraphernalia, and large amounts of cash openly accessible to her in two bedrooms she had rented out to her sister and brother-in-law as the appellant had access to the unlocked bedrooms and there was no evidence that appellant was denied entry to these rooms in her home).

*Commonwealth v. Smith*, 317 A.3d 1053, 1059-60 (Pa.Super. 2024).

Here, our review of the record demonstrates that the Commonwealth presented sufficient evidence that Brooks constructively possessed the controlled substances. The evidence established that Brooks and Johnston were the only adults residing in the home and nobody else was present when the police officers executed the search. Brooks readily admitted that she lived at the residence with Johnston for approximately two years and that she was aware that Johnston was selling narcotics out of the home. The items seized were from common areas of the residence, which Brooks had equal access to.

Indeed, some of the contraband was in plain view. Although Brooks testified that she did not know the location or amount of the contraband, the jury as factfinder was within its right to assess credibility and believe all, part, or none of her testimony. *Miller*, 172 A.3d at 640. We agree that the evidence was sufficient to establish that Brooks constructively possessed the controlled substances. *Hopkins*, 67 A.3d at 820.

Having found that Brooks possessed the controlled substances, we next determine whether there was sufficient evidence to convict Brooks on the second element of PWID – intent to deliver. To determine if there was sufficient evidence to convict a defendant of intent to deliver, courts may consider various factors. First, "the intent to deliver may be inferred from possession of a large quantity of controlled substance." *Commonwealth v. Brockman*, 167 A.3d 29, 39 (Pa.Super. 2017) (citation omitted). Also relevant are "the manner in which the controlled substance was packaged, the behavior of the defendant, the presence of drug paraphernalia, and large[] sums of cash found in possession of the defendant." *Commonwealth v. Ratsamy*, 934 A.2d 1233, 1237-38 (Pa. 2007) (citation omitted). Another factor that may be considered is expert testimony. *Taylor*, 33 A.3d at 1288. "Expert opinion testimony is admissible concerning whether the facts surrounding the possession of controlled substances are consistent with an intent to deliver rather than with an intent to possess it for personal use." *Id.* (citation omitted). We consider the totality of the circumstances in assessing

whether a defendant possessed controlled substances with the intent to deliver. *Id.* at 1289.

Here, the Commonwealth presented sufficient evidence to support the jury's conclusion that Brooks possessed the controlled substances with the intent to deliver them. The items seized from Brooks's residence included, *inter alia*, baggies containing approximately 188.69 grams of cocaine; a scale, sandwich baggies, and latex gloves in close proximity to the cocaine; and $6,094 in cash in the recliner. Detective Holland, who was qualified as an expert in the field of drug trafficking, testified that these items were indicative of possession with intent to deliver. N.T. at 124-28. Detective Holland pointed out that the amount of cocaine found in the residence was "an extremely large amount of cocaine or crack cocaine to have on hand," and had an estimated street value of $7,000 to $14,000. *Id.* at 124, 127. Detective Holland opined that, based upon his education, training, and experience, he was "[a] hundred percent" certain that the controlled substances were used for distribution and not for personal use. *Id.* at 128-29. He testified that "in [his] entire lifetime," he "never heard of somebody using seven ounces of cocaine" for their personal use and he deals with people who have drug addictions on a daily basis. *Id.* at 131. Based on the totality of the circumstances and viewing the evidence in the light most favorable to the Commonwealth, we conclude the Commonwealth presented sufficient evidence to sustain Brooks's convictions for possession and PWID.

Brooks's second issue challenges the admissibility of the envelope containing the $6,094 in cash. Brooks argues that on cross-examination, Trooper Smolleck testified that he and his corporal signed and sealed the evidence bag containing the envelope with the $6,094 on October 15, 2019, the day that the search warrant was executed. Defense counsel pointed out, and Trooper Smolleck agreed, that two additional signatures appeared on the evidence bag containing the envelope on September 2, 2020. Brooks argues that Trooper Smolleck "had no explanation as to why there were two other signatures and more importantly could not confirm whether any money was removed, taken out and replaced, or even how much money was in the evidence envelope at trial." Brooks's Br. at 13-14. Brooks emphasizes that the Commonwealth used the amount of $6,094 seized in the search to support the offense of PWID since it was a large amount of cash. According to Brooks, "[t]he money was never removed and re-counted by the Commonwealth and/or [Trooper Smolleck] during trial, even after testimony revealed that the evidence envelope had been opened after it was originally sealed by [Trooper Smolleck] on October 15, 2019." *Id.* at 14.

The admission of evidence is within the discretion of the trial court and will only be reversed where there is an abuse of that discretion. *See Commonwealth v. Radecki*, 180 A.3d 441, 451 (Pa.Super. 2018). An abuse of discretion exists where the court overrides or misapplies the law or exercises judgment in a way "that is manifestly unreasonable, or the result of

bias, prejudice, ill will or partiality, as shown by the evidence of record." ***Id.*** (citation omitted).

Here, the trial court found that the evidence's probative value was not outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Trial Ct. Op. at 11 (citing Pa.R.E. 403). The court determined that the admission of the envelope containing the $6,094 "simply corroborated the testimony provided by multiple witnesses[.]" ***Id.***

Brooks's argument on this issue is unclear and underdeveloped. Her brief does not specify the legal rule that she contends the admission of the envelope violated. Nor does she offer any citation to any legal authority in this part of the argument section of her brief. ***See Commonwealth v. Lonon***, No. 1498 EDA 2019, 2020 WL 94197, at *2 (Pa.Super. filed Jan. 9, 2020) (unpublished mem.) (citing ***Commonwealth v. Spotz***, 716 A.2d 580, 585 n.5 (Pa. 1998)) (explaining that undeveloped or unclear arguments are waived). In any event, we agree with the trial court that it did not abuse its discretion in finding no Rule 403 violation. To the extent Brooks's brief can be read as asserting a lack of authentication, the issue is likewise meritless. Detective Smolleck testified that $6,094 in cash was recovered from the recliner and he and the other troopers logged the money into an inventory sheet and placed it into an envelope on the night of the search. N.T. at 48-49, 73-75.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: <u>11/13/2025</u>